**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ROTHSCHILD MOBILE IMAGING INNOVATIONS, LLC | § § § | |
| Plaintiff, | § § | Case 1:14-cv-00617-SLR |
| v. | § § | JURY TRIAL DEMANDED |
| MITEK SYSTEMS, INC., JPMORGAN CHASE & Co. and JPMORGAN CHASE BANK, N.A. | § § § § | |
| Defendants. | § § | |
| ROTHSCHILD MOBILE IMAGING INNOVATIONS, LLC | § § § § | |
| Plaintiff, | § § | Case 1:14-cv-01142-SLR |
| v. | § § | JURY TRIAL DEMANDED |
| BANK OF AMERICA CORPORATION, BANK OF AMERICA, N.A., AND MITEK SYSTEMS, INC. | § § § § | |
| Defendants. | § § | |
| ROTHSCHILD MOBILE IMAGING INNOVATIONS, LLC | § § § § | |
| Plaintiff, | § § | Case 1:14-cv-01143-SLR |
| v. | § § | JURY TRIAL DEMANDED |
| CITIGROUP INC., CITIBANK, N.A. AND MITEK SYSTEMS, INC. | § § § § | |
| Defendants. | § § | |

|  | § |  |
| --- | --- | --- |
| ROTHSCHILD MOBILE IMAGING | § | |
| INNOVATIONS, LLC | § | |
| | § | |
| Plaintiff, | § | Case 1:14-cv-01144-SLR |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| WELLS FARGO & COMPANY, | § | |
| WELLS FARGO BANK, N.A. and | § | |
| MITEK SYSTEMS, INC. | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

## PLAINTIFF RMII'S OPPOSITION TO DEFENDANTS' MOTIONS TO SEVER, STAY, AND TRANSFER

Richard C. Weinblatt #5080
Stamatios Stamoulis #4606
**STAMOULIS & WEINBLATT LLC**
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
Telephone: (302) 999-1540
Facsimile: (302) 762-1688
weinblatt@swdelaw.com
stamoulis@swdelaw.com

*Of Counsel*:

Michael W. Shore
Alfonso Garcia Chan
Andrew M. Howard
Dustin R. Lo
**SHORE CHAN DEPUMPO LLP**
901 Main Street, Suite 3300
Dallas, TX 75202
Telephone: (214) 593-9110
Facsimile: (214) 593-9111
mshore@shorechan.com
achan@shorechan.com
ahoward@shorechan.com
dlo@shorechan.com

**ATTORNEYS FOR PLAINTIFF
ROTHSCHILD MOBILE IMAGING
INNOVATIONS, LLC**

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................1

II.     NATURE AND STAGE OF THE PROCEEDINGS .........................................................2

III.    SUMMARY OF ARGUMENT .....................................................................................3

IV.     STATEMENT OF FACTS ...........................................................................................3

        A.      The Accused Products..................................................................................3

        B.      Mitek ..........................................................................................................4

        C.      Chase ..........................................................................................................5

        D.      Bank of America .........................................................................................5

        E.      Citigroup .....................................................................................................6

        F.      Wells Fargo .................................................................................................6

V.      ARGUMENTS AND AUTHORITY...............................................................................7

        A.      Bank Defendants should not be severed. ....................................................7

                1.      RMII's claims against Bank Defendants are not "peripheral."...................7

                2.      Litigation against only Mitek will not be dispositive of Bank
                        Defendants' actions...................................................................................10

        B.      The cases against Bank Defendants should not be stayed. ....................................11

                1.      RMII would be tactically disadvantaged and unduly prejudiced if
                        stays are granted........................................................................................12

                2.      A stay will not simplify the issues and the customer-suit exception
                        does not apply. .........................................................................................12

                3.      Factors Relating to Timing of Requested Stays........................................14

        C.      RMII'S CLAIMS AGAINST MITEK SHOULD NOT BE
                TRANSFERRED ........................................................................................15

                1.      Plaintiff's Choice of Forum. ....................................................................15

2.      Defendant Mitek's forum preference.........................................................16

3.      Where the claims arose. ..........................................................................17

4.      The convenience of the parties. ...............................................................18

5.      The convenience of the witnesses............................................................18

6.      Location of books and records..................................................................18

7.      Practical considerations. .........................................................................19

8.      Relative administrative difficulty ............................................................20

D.      Summary of *Jumara* factors..................................................................................20

VI.     CONCLUSION.............................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*ADE Corp. v. KLA-Tencor Corp.*,
    138 F. Supp. 2d 565 (D. Del. 2001) ....................................................................... 19

*Air Prods. and Chems., Inc. v. MG Nitrogen Servs., Inc.*,
    133 F. Supp. 2d 354 (D. Del. 2001) ................................................................... 9, 13

*Alloc, Inc. v. Unilin Decor N.V.*,
    No. 02-c-1266, 2005 WL 3448060 (E.D. Wis. Dec. 15, 2005) ............................... 13

*Am. Acad. of Sci. v. Novell, Inc.*,
    No. C-91-4300, 1992 WL 313101 (N.D. Cal. July 8, 1992)................................... 13

*Beacon Nav. GmbH v. Chrysler Grp. L.L.C.*,
    No. 11-CV-921 GMS, 2013 WL 1163943 (D. Del. Mar. 20, 2013)........................ 17

*Cellectis S.A. v. Precision Biosciences, Inc.*,
    858 F. Supp. 2d 376 (D. Del. 2012) ................................................................. 17, 18

*CentiMark Corp. v. Jacobsen*,
    No. Civ. A. 11-1137, 2011 WL 6000719 (W.D. Pa. Nov. 30, 2011)....................... 19

*Cooper Notification, Inc. v. Twitter, Inc.*,
    No. No. 09-cv-865-LPS, 2010 WL 5149351 (D. Del. Dec. 13, 2010) .................... 15

*Dekalb Genetics Corp. v. Syngenta Seeds, Inc.*,
    No. 4:06-cv-1191-ERW, 2007 WL 1223510 (E.D. Mo. Apr. 24, 2007) ................. 14

*Drew Techs. Inc. v. Robert Bosch, L.L.C.*,
    No. 11-15068, 2012 WL 314049 (E.D. Mich. Jan. 31, 2012)................................. 14

*Helicos Biosciences Corp. v. Illumina, Inc.*,
    858 F. Supp. 2d 367 (D. Del. 2012) ................................................................. 15, 16

*Indianapolis Motor Speedway Corp. v. Polaris Indus., Inc.*,
    2000 WL 777874 (S.D. Ind. June 15, 2000) ......................................................... 14

*Innovative Automation, LLC v. Audio Video and Video Labs, Inc.*,
    No. 6:11-cv-234 LED-JDL, 2012 WL 10816848 (E.D. Tex. May 30, 2012)............ 8

*Intellectual Ventures I LLC v. Altera Corp.*,
    842 F. Supp. 2d 744 (D. Del. 2012) ....................................................................... 16

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir. 1995) ........................................................................ 15, 18, 20

*Lifelink Pharm., Inc. v. NDA Consulting, Inc.*,
   No. 5:07-cv-785, 2007 WL 2459879 (N.D. Ohio Aug. 24, 2007) ........................... 10

*Microsoft Corp. v. Commonwealth Scientific and Indus. Research Org.*,
   No. 6:06-cv-549, 2007 WL 4376104 (E.D. Tex. Dec. 13, 2007) .............................. 9

*Mitek Sys., Inc. v. TIS Am., Inc. and Top Image Sys., ltd.*,
   Case No. 1:12-cv01208-RGA, 2014 WL 3891237 (D. Del. Aug. 6, 2014) ............... 17

*Mitek Sys., Inc. v. United Servs. Auto. Ass'n*,
   No. 12-462 GMS, 2012 WL 3777423 (D. Del. Aug. 30, 2012) ............................... 18

*NFC Tech., LLC v. HTC Am.*,
   No. 2:13-cv-01058-JRG, 2014 WL 3867963 (E.D. Tex. Aug. 5, 2014) .................... 13

*Pragmatus AV, LLC v. Yahoo! Inc.*,
   No. 11-cv-902-LPS-CJB, 2012 WL 4889438 (D. Del. Oct. 15, 2012) ..................... 15

*Privasys, Inc. v. Visa Int'l*,
   No. C 07-3257 SI, 2007 WL 3461761 (N.D. Cal. Nov. 14, 2007) .................... 8, 9, 14

*Proctor & Gamble Co. v. Team Tech., Inc.*,
   No. 1:12-cv-552, 2012 WL 5903126 (S.D. Ohio Nov. 26, 2012) ............................ 14

*Richmond v. Lumisol Elec. Ltd.*,
   No. 12-1944 (MLC), 2014 WL 1716447 (D.N.J. Apr. 30, 2014) .............................. 7

*Smart Audio Techs., LLC v. Apple, Inc.*,
   910 F. Supp. 2d 718 (D. Del. 2012) .................................................................. 18

*SoftView LLC v. Apple Inc.*,
   No. 10-cv-389-LPS, 2012 WL 3061027 (D. Del. July 26, 2012) ............................ 15

*Teleconference Sys. v. Proctor & Gamble Pharm., Inc.*,
   676 F. Supp. 2d 321 (D. Del. 2009) ......................................................... 9, 12, 13

*Wireless Media Innovations, LLC v. LeapFrog Enterprises, Inc.*,
   No.13-cv-1545-SLR-SRF, 2014 WL 1203035 (D. Del. Mar. 20, 2014) .................. 16

## I. INTRODUCTION

Mitek[1] and Chase[2] moved to stay the claims against Chase, sever the claims against Mitek, and transfer those claims to the Southern District of California, on the principal basis that Chase is a mere customer of Mitek's software products. The remaining Defendants – Bank of America, Citigroup, and Wells Fargo[3] – filed Motions to Stay and Notices of Joinder in that motion.[4] RMII[5] responds to all these motions collectively herein.

Each of Bank Defendants has significant involvement in the development of the accused products related to that Defendant and are not "mere resellers." Mitek's accused instrumentalities employ Bank Defendants' servers and Bank Defendants' separately-developed applications. While Mitek is liable for its direct infringement and induced infringement by Bank Defendants, Bank Defendants are independently liable for their direct infringement and induced infringement by their customers. Because inducement requires an underlying direct infringer, RMII's case will necessarily require the participation of Bank Defendants even only as to RMII's allegations against Mitek. And Bank Defendants are separately liable for their own acts of inducement to their customers and direct infringement by their custom-tailored applications.

No judicial efficiency is advanced by severance and a stay, as Bank Defendants have refused to stipulate to the defenses asserted by Mitek, refused to agree to any claim construction in the

---

[1] Defendant Mitek Systems, Inc is referred to as "Mitek."
[2] JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. are collectively referred to as "Chase."
[3] Bank of America Corporation and Bank of America, N.A. are referred to as "Bank of America." Citigroup Inc. and Citibank, N.A. are referred to as "Citigroup." Wells Fargo & Company and Wells Fargo Bank, N.A. are referred to as "Wells Fargo." Chase, Bank of America, Citigroup, and Wells Fargo are collectively referred to as the "Bank Defendants." Collectively, Mitek and the Bank Defendants are referred to as "Defendants."
[4] The related cases are No. 14-cv-01142-SLR, No. 14-cv-01143-SLR, and No. 14-cv-01144-SLR.
[5] "RMII" or "Plaintiff" refers to Plaintiff Rothschild Mobile Imaging Innovations, LLC.

Mitek case, and refused to agree that their products are the same as Mitek's for purposes of infringement. If Bank Defendants are stayed and severed, each of these issues will be litigated anew during rounds two, three, four, and five. And if Bank Defendants are severed and stayed, RMII may be unable to obtain satisfaction of any judgment, as Mitek claims it is unable to turn a profit, while Bank Defendants have obtained hundreds of millions of dollars in sales and cost savings through the accused products.

Mitek's motion to transfer is only offered in the event a stay is granted, and should be denied both because the requested severance and stay lack merit and because transfer is improper. An analysis of the governing factors demonstrates that Mitek has not met its burden to transfer.

## II.  NATURE AND STAGE OF THE PROCEEDINGS

On May 16, 2014, RMII filed suit against Mitek for infringement of U.S. Patent Nos. 7,450,163, 7,995,118, 7,456,872 and 7,991,792 (the "Asserted Patents"). Case 1:14-cv-00617 (the "617 Action") D.I. 1. Chase was added to the 617 Action on June 12, 2014. *Id.* at D.I. 7. RMII filed suit against Bank of America and Mitek on September 8, 2014 for direct and induced infringement of the Asserted Patents. Case 1:14-cv-01142 (the "1142 Action") D.I. 1. On the same day, RMII also filed suit alleging direct and induced infringement of the Asserted Patents against Mitek and Citigroup, Case No 1:14-cv-01143 (the "1143 Action") D.I. 1, and against Mitek and Wells Fargo, Case No. 1:14-cv-01144 (the "1144 Action") D.I. 1.

The Court has already conducted a scheduling conference and set a carefully-negotiated schedule for claim construction discovery, *Markman* hearing, document discovery, deposition discovery, expert discovery, summary judgment practice and trial. All Defendants are operating under the same agreed-to schedule.

## III. SUMMARY OF ARGUMENT

1. Bank Defendants are independent and necessary infringers who should not be severed. Each of Bank Defendants independently developed its accused device "in house" or pursuant to "prototyping" and "testing" to "incorporate" Mitek technology. As a result, Mitek is accused of its direct infringement and induced infringement by Bank Defendants. Bank Defendants, in turn, are accused of their direct infringement and induced infringement by their customers. Further, given Mitek's claims of poverty, RMII has an independent basis for pursuing its claims against Bank Defendants.

2. Litigation against Mitek will not dispose of the claims against Bank Defendants. Each of Bank Defendants has a separate and distinct accused product from Mitek, and Bank Defendants indicate they intend to re-litigate claim construction, defenses, and infringement.

3. A stay of RMII's claims against Bank Defendants should also not be granted because of the undue prejudice it would impose upon RMII. RMII would be prejudiced by delay in its cases against Bank Defendants, because it would be prevented access to necessary proof, and because Mitek may not be able to pay any judgment.

4. Transfer is improper because Mitek is incorporated in Delaware, sues for patent infringement here, and identified no witnesses or evidence that are unavailable in Delaware, among other factors weighing against transfer.

## IV. STATEMENT OF FACTS

### A.  The Accused Products

Mitek's "Mobile Deposit," "Mobile Photo Bill Pay," "Mobile Photo Account Opening," "Mobile Photo Payments," "Mobile Photo Balance Transfer," "Mobile Photo Account Funding," "Mobile Insurance Quote," and "Mobile Imaging Platforms" are accused of infringing the

Asserted Patents. 617 Action at D.I. 7 ¶ 12. Each of Bank Defendants is accused of infringing the

Asserted Patents by its mobile banking application: "Chase Mobile" (617 Action at D.I. 7 ¶ 12);

"Bank of America – Mobile Banking" (1142 Action at D.I. 1 ¶ 12); "Citi Mobile" (1143 Action

D.I. 1 ¶ 12); and "Wells Fargo Mobile" (1144 Action D.I. 1 ¶ 12).

Mobile banking is a driving force in the banking industry. "Nearly half of smartphone users

who switched banks said that mobile banking was an important factor in their decision."

Declaration of Andrew M. Howard ("Howard Dec.") at Ex. A. "Mobile deposit is the No. 1

mobile feature sought by all smartphone and tablet owners who would switch banks for mobile

banking." *Id.* at Ex. B. "[M]ajor banks report saving $3.88 with each mobile check deposit

compared to a teller deposit, with banks having saved an estimated $100 million in transactions

costs as a result." *Id.*

### B.  Mitek

Mitek claims to be "the leading innovator of mobile imaging for financial transactions." *Id.* at

Ex. C. According to Mitek, its technology is "licensed by more than 3,000 financial institutions

including all of the top 10 retail banks in the US." *Id.*

"There are several integration options for [Mitek's] Mobile Deposit® to support [given]

business requirements and to power [a] mobile strategy." *Id.* at Ex. D. Mitek offers both a

"turnkey solution" which is "[i]ntegrated with Bank credential management platform[s]" and

"Feature In Mobile Banking" in which Mitek technology is "integrated with" a free-standing

"Banking App and Platform." *Id.* In the standard workflow, Mitek's "Mobile Imaging Platform"

is partnered with the Bank "Phone App" which both validates the end user and "captures [the]

Image" as well as "3rd Party payment processing, image archival or other systems." *Id.* at Ex. E.

In this workflow, the accused products require three different actors:



### C. Chase

Chase claims to have "launched mobile back in 2006." *Id.* at Ex. F. Chase "developed its …

mobile-capture system in-house." *Id.* at Ex. G. In 2011, Chase "expand[ed] its QuickDeposit"

mobile deposit feature by partnering with Mitek. *Id.* at Ex. H. While Mitek technology allegedly

captures images, those images are "received by the bank's RDC solution." *Id.* at Ex. H. By 2013,

Chase had "13 million customers who use its mobile services." *Id.* at Ex. A.

### D. Bank of America

In October 2009, "Bank of America [began] testing its own mobile deposit service on

Apple's iPhone" and in 2010 "conducted a Mobile Remote Deposits market trial." *Id.* at Ex. I. In

2011, Mitek announced that it "added Bank of America … through its distribution relationship

with NCR Corp., a maker of automated teller machines and other financial technology." *Id.* at

Ex. J. "[I]nitial tests" took place in early 2012, but Bank of America delayed releasing its mobile

deposit services until later that year. *Id.* at Ex. K. By that time, Bank of America had "developed

[its] prototype and had several clients provide feedback." *Id.* at Ex. L. Bank of America employs

its own "mobile check deposit developer" responsible for "develop[ing], enhanc[ing],

debug[ging], support[ing], maintain[ing], and test[ing] software applications." *Id.* at Ex. M. By

2013, more "than 100,000 checks [were] deposited each day" by Bank of America customers. *Id.*

at Ex. A.

### E.  Citigroup

In early 2011, Citigroup recognized that it was "a fundamental requirement for every bank to

have a really good app" but had not implemented mobile deposit. *Id.* at Ex. N. Citigroup started

the "pilot phase" of its mobile deposit features in October of 2011. *Id.* at Ex. O. "After five

months of testing, [Citigroup] opened the feature." *Id.* To continue to support its mobile deposit

features, Citigroup employs at least a Senior Manager of Mobile Development that managed "a

large team of developers to deliver high quality projects to enhance mobile banking" and

"[c]hampioned and led several design improvement efforts for enhancing strategic mobile

functionalities, including Mobile Check Deposit." *Id.* at Ex. P. Citigroup currently advertises an

open position for a Senior Front End Developer "to influence digital product owners and [its] IT

partners for an optimal architecture that delivers the best in class design of digital banking of

tomorrow." *Id.* at Ex. Q.

### F.  Wells Fargo

"Wells Fargo said its mobile deposit service was primarily developed in-house, a move that's

become a hallmark" of Wells Fargo. *Id.* at Ex. R. "Wells Fargo mobile banking launched in

2007" and "[l]ooking forward [in 2012], Wells Fargo [promised to] continue to develop mobile

banking applications." *Id.* at Ex. S. In the summer of 2012, Wells Fargo claimed it was in the

"launch, listen, and learn mode" regarding mobile deposit services. *Id.* at Ex. R. Wells Fargo

"regularly pilot[s] new products/services so [it] can listen and learn from [its] customers before making changes" and took those "steps in [2012] with Mobile Deposit before making it widely available." *Id.* at Ex. T.

## V.  ARGUMENTS AND AUTHORITY

### A.  Bank Defendants should not be severed.

Defendants do not contest that Bank Defendants were properly joined in each RMII action pursuant to the America Invents Act and its requirement that each of the joined defendants must have participated in the same transaction or occurrence. Mitek has agreed to indemnify Bank Defendants under an incomplete belief that **only** the shared transaction or occurrence between Mitek and the Bank Defendant groups is at issue. Based upon this incorrect belief, Defendants cite a Southern District of Mississippi case for the proposition that RMII's claims against Bank Defendants should be severed because: (1) "RMII's claims against [Bank Defendants] are peripheral to its claims against Mitek"; (2) "Adjudication of the claims against Mitek is potentially dispositive of the claims against [Bank Defendants]"; and (3) transfer is proper. Arguments (1) and (2) will be addressed here, while the impropriety of transfer is addressed in Section V.C, *infra*.

### 1.  RMII's claims against Bank Defendants are not "peripheral."

"The rationale behind severing and staying … is that 'second-hand entities like retailers or distributors [are] not involved and [would] not have substantive knowledge about the patent infringement, which would begin at the design and manufacture stages.'"[6] "[A] claim is peripheral if the defendant seeking severance merely resells a manufacturer's products because

---

[6] *Richmond v. Lumisol Elec. Ltd.*, No. 12-1944 (MLC), 2014 WL 1716447, at *4 (D.N.J. Apr. 30, 2014) (citing *MGT Gaming, Inc.*, 2013 WL 5755247, at *12).

the reseller can only be liable if the manufacturer is liable for infringement."[7] But where the plaintiff alleges that defendants have "integrated" accused products into their systems, it is not a "traditional manufacturer/distributor" case.[8]

Defendants' motion is based on the argument that Bank Defendants are mere customers of the accused technology with no evidentiary support. Each of Bank Defendants also developed its accused instrumentalities *independent* of Mitek. Chase "developed its … mobile-capture system in-house." Howard Dec. Ex. G. Bank of America conducted "initial tests" and "prototyp[ing]" and employs its own mobile check deposit developers to continue to "develop, enhance, [and] debug" its software applications. *Id.* at Exs. K, L, M. Citigroup conducted a "pilot phase," utilized "five months of testing," and employs "a large team of developers" regarding its mobile banking. *Id.* at Exs. O, P. Wells Fargo's "mobile deposit service was primarily developed in-house," and Wells Fargo conducted testing before rolling out its mobile deposit features. *Id.* at Exs. R, S, T. And Mitek's own documents demonstrate that each of Bank Defendants' applications is likely a separate and distinct part of the accused instrumentalities as to Bank Defendants, and requires integration of the Bank Defendants' applications with Mitek technology. *Id.* at Exs. D, E. This is not a traditional manufacturer/distributor case, as each of Bank Defendants has separate and distinct technology that, in some way, integrates Mitek technology.[9] Each of Bank Defendants has separate and specific knowledge regarding how it allegedly infringes the Asserted Patents that is not available to Mitek.

---

[7] *Innovative Automation, LLC v. Audio Video and Video Labs, Inc.*, No. 6:11-cv-234 LED-JDL, 2012 WL 10816848, at *5 (E.D. Tex. May 30, 2012).
[8] *Id.*
[9] *Privasys, Inc. v. Visa Int'l*, No. C 07-3257 SI, 2007 WL 3461761, at *3 (N.D. Cal. Nov. 14, 2007) (declining to stay because "Plaintiff argues that Chase and Wells Fargo are not mere customers because they manufacture and issue [the accused] cards themselves, and are involved in carrying out the infringement of the patented method.")

**OPPOSITION TO DEFENDANTS' MOTION TO SEVER, STAY, AND TRANSFER–**          **Page 8**

Because of the separate and distinct accused products, RMII's claims as to each of Defendants are different. Mitek is accused of direct infringement through its use and sale of Mitek technology. Mitek is also accused of inducement through the direct infringement of Bank Defendants in their custom-tailored applications. Bank Defendants are liable for their direct infringement by their specific applications, and induced infringement by their customers.

As a result, this case is similar to *Air Prods. and Chems., Inc. v. MG Nitrogen Servs., Inc.*, 133 F. Supp. 2d 354, 357 (D. Del. 2001) (Robinson, J.), in which this Court denied a motion to stay claims as to alleged "customer defendants." In that case, the customer defendants were not "merely resellers," but were alleged to infringe as the result of inclusion of the distributor's technology. *Id.* This Court found that the alleged customer's use of the accused devices, of which the manufacturer's component was "just a part," directly infringed the claims-in-suit, while the manufacturer's sale of the product only induced or contributed to infringement. *Id.* As a result, a stay was not proper. *Id.* Similarly, the claims against Bank Defendants are not "peripheral" to the claims against Mitek, but are based upon different accused products and different acts of infringement that incorporate Mitek technology.[10]

Additionally, RMII "has special reasons to pursue claims against [Mitek's] customer banks because it has significant damages claims against them."[11] Mitek claims a 2014 "net income loss of over $5 million" and a 2013 "net income loss of over $7 million." 617 Action D.I. 30 ¶ 14.

---

[10] *See also Microsoft Corp. v. Commonwealth Scientific and Indus. Research Org.,* No. 6:06-cv-549, 2007 WL 4376104, at *2-3 (E.D. Tex. Dec. 13, 2007) (The present suit is not the typical 'customer suit exception' case where a patent holder is suing a mere 'reseller' of the goods….[T]he customers' end products are what allegedly directly infringe, not the components") (citing *Air Prods.*, 133 F. Supp. 2d at 357); *Teleconference Sys. v. Proctor & Gamble Pharm., Inc.*, 676 F. Supp. 2d 321, 327 (D. Del. 2009) (customer suit exception does not apply "because plaintiff alleges that [Mitek's] customers are not mere resellers but are direct infringers").

[11] *Privasys, Inc.*, 2007 WL 3461761, at *4.

Bank Defendants, on the other hand, claim millions of customers and checks deposited.

According to Mitek, "major banks report saving $3.88 with each mobile check compared to a

teller deposit, with banks having saved an estimated $100 million in transactions costs as a

result." Howard Dec. Ex. B. RMII is entitled to proceed with its cases against Bank Defendants

because of the potential that it would be unable to collect any judgment against Mitek, while

Bank Defendants enjoy significant revenues and profits based upon the accused technologies.[12]

Severance is not proper.

> 2. *Litigation against only Mitek will not be dispositive of Bank Defendants' actions.*

Because of the differences in the accused products, litigation against Mitek will not resolve

the issue of infringement by Bank Defendants. Litigation against only Mitek will not even

resolve the claims for inducement against Mitek, as discovery will be needed regarding Bank

Defendants' acts of direct infringement. But the issues that Bank Defendants would re-litigate

after a stay go farther.

RMII conferred with counsel for Bank Defendants in an attempt to resolve the pending

motion practice or to at least narrow the issues requiring Court intervention. *See* Howard Dec.

Ex. U. While Chase claims that its agrees "to be bound by decision rendered in connection with

the Mitek claims" (617 Action D.I. 29 ¶ 4) and Bank of America, Citigroup, and Wells Fargo

claim they agree to be bound "on the issues of infringement and validity as they relate to the

Accused Systems" (1442 Action D.I. 21 ¶ 4; 1443 Action D.I. 24 ¶ 4; 1444 Action D.I. 24 ¶ 4),

---

[12] *See Lifelink Pharm., Inc. v. NDA Consulting, Inc.*, No. 5:07-cv-785, 2007 WL 2459879, at *2 (N.D. Ohio Aug. 24, 2007) (denying stay because "the potential scope of damages in this case is presently unclear, such that it is possible that [plaintiff] may be unable to collect any judgment from [the alleged manufacturer] alone.").

those promises are illusory. Counsel for RMII sought clarification from counsel for Bank Defendants[13] that:

1) any post-stay case would simply be limited to the amount of damages Bank Defendants owe (assuming Mitek is found to infringe and the patents found valid);

2) Bank Defendants would not claim their products are, in any way, different than Mitek's for purposes of infringement;

3) they would abide by the claim constructions in the RMII/Mitek case; and

4) they would stand on the defenses asserted by Mitek, and assert no other defenses.

Howard Dec. Ex. U. Counsel for Bank Defendants was also asked whether Bank Defendants would "participate in discovery regarding [their] revenues, sales, costs, and profits." *Id.* Despite RMII's three requests, Bank Defendants refused to directly respond, instead claiming "our position on all of these issues is fully set forth in our moving papers." *Id.*

If the claims against Bank Defendants are severed, any later litigation would begin anew. Bank Defendants would claim differences in their products, which given their independent development makes sense, and require wholly-new infringement analyses. Bank Defendants would seek to construe different terms or different constructions for previously-construed claim terms, and would likely assert defenses not set forth in the Mitek action. Severance should be denied.

**B.  The cases against Bank Defendants should not be stayed.**

The following factors are relevant when considering a stay: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and trial of the case; (3) whether discovery is complete; and (4) whether a

---

[13] To RMII's knowledge, Wells Fargo & Company and Wells Fargo Bank, N.A. are the only Bank Defendants not yet being indemnified by Mitek and represented by Paul Hastings.

trial date has been set."[14] Severing and staying the cases against Bank Defendants would operate to RMII's detriment and would not result in efficiency or simplification of issues.

*1. RMII would be tactically disadvantaged and unduly prejudiced if stays are granted.*

RMII would suffer a tactical disadvantage and undue prejudice a result of the requested stays. A stay as to Bank Defendants would remove RMII's ability to prove Bank Defendants' acts of *direct* infringement, and stymie RMII's ability to prove its case of inducement by Mitek. This is particularly problematic when considering that Mitek's applications work with at least another party's server, and that each of Bank Defendants operates a different, and separately-developed, mobile banking platform.

A stay would also significantly delay RMII's ability to obtain judgments on its infringement claims against Bank Defendants. If a stay is granted, RMII will have to wait until the stay is lifted to pursue its claims against Bank Defendants, which alone demonstrates prejudice.[15]

Delay is not the sole concern. While Bank Defendants have obtained hundreds of millions in cost savings and more than 60% of customers indicate they switch banking institutions as a result of mobile banking options, Mitek claims that it has operated at a loss for the last two years. If this pattern continues for Mitek, RMII may end up with an unenforceable judgment against a company that is in bankruptcy, while Bank Defendants – the ones obtaining hundreds of millions of dollars in benefits – continue to infringe. RMII's claims against Bank Defendants should be adjudicated with its claims against Mitek in one action, which is already consolidated for pretrial purposes, to avoid undue prejudice and tactical disadvantage.

*2. A stay will not simplify the issues and the customer-suit exception does not apply.*

---

[14] *Teleconference Sys.*, 676 F. Supp. 2d at 326 (citations omitted).

[15] *Id.* at 329. ("First, a stay would prejudice plaintiff's choice of forum because plaintiff has a right to litigate in the forum of its choice. Plaintiff chose to sue [RMII's alleged] customers in Delaware and a stay would not allow plaintiff to proceed against the customers").

As discussed above, Bank Defendants reserve the right to re-litigate claim construction, any defenses, and infringement by Bank Defendants' products. Even if they did not, RMII is still entitled to discovery regarding Bank Defendants' acts of direct infringement while proceeding in its claims against Mitek for induced infringement. This discovery is important because each of Bank Defendants independently developed the accused products, and independently prototyped and tested those products. This Court holds that a stay as to alleged customers who, like Bank Defendants, are not mere resellers is improper.[16] Simply put, "[t]he defendants in this case are not 'mere resellers' of [Mitek technology]. They incorporate [Mitek technology] into a larger environment of mobile device components to produce new products that allegedly infringe [RMII's] patents."[17]

Additionally, "where a patentee has a separate interest in litigating against the customer, the 'real party in interest' rationale for giving priority to the manufacturer's lawsuit is inapplicable."[18] This principal is "particularly relevant" when the patent owner seeks to hold the manufacturer liable on inducement theories, based upon direct infringement by the customers.[19] RMII has a separate interest in litigating against Bank Defendants—their *direct* infringement of the Asserted Patents and their induced infringement of their customers—and a stay under the customer suit exception would be improper.

---

[16] *See, e.g.*, *Air Prods.*, 133 F. Supp. 2d at 357; *Teleconference Sys.*, 676 F. Supp. 2d at 327 (customer suit exception does not apply "because plaintiff alleges that [Mitek's] customers are not mere resellers but are direct infringers").

[17] *NFC Tech., LLC v. HTC Am.*, Case No. 2:13-cv-01058-JRG, 2014 WL 3867963, at *2 (E.D. Tex. Aug. 5, 2014).

[18] *Am. Acad. of Sci. v. Novell, Inc.*, No. C-91-4300, 1992 WL 313101, at *3 (N.D. Cal. July 8, 1992).

[19] *Id.*; *see also Alloc, Inc. v. Unilin Decor N.V.*, No. 02-c-1266, 2005 WL 3448060, at *3 (E.D. Wis. Dec. 15, 2005) ("While in some circumstances the law favors suits against manufacturers, the law does not do so when a patentee has "a separate interest in litigating against the customer.").

The "customer-suit" exception does not apply here for another reason. "When the manufacturer not only can be, but is a party to the first-filed litigation, the rationale behind the customer-suit exception is weakened to the point of irrelevancy."[20] Here, Mitek is involved in a consolidated action with Bank Defendants; any particularized interest Mitek has in defending against RMII's claims of infringement can be addressed in conjunction with RMII's claims against Bank Defendants.

### 3. Factors Relating to Timing of Requested Stays

On December 2, 2014, the parties – including all Defendants – filed a proposed scheduling order as required by the Court that would govern all four cases including RMII's claims against Mitek and Bank Defendants. D.I. 37. The parties participated in a scheduling conference with the Court the following day. The 10-day trial setting begins on April 3, 2017. Each of the deadlines in the proposed scheduling order is specifically set to culminate in this trial date. Any additional delay would only work to the detriment of plaintiff and resolution of its claims against Mitek and Bank Defendants.

Delaware courts have found similarly situated cases (as far as status of the litigation) warranted denial of a stay:

> Discovery has just begun and will not be complete for another eleven months. Trial is still twenty months away. However, it is noteworthy that a schedule is in place and a ten-day jury trial is on the Court's calendar..... In the instant case, in

---

[20] *Drew Techs. Inc. v. Robert Bosch, L.L.C.*, No. 11-15068, 2012 WL 314049, at *6 (E.D. Mich. Jan. 31, 2012); *Proctor & Gamble Co. v. Team Tech., Inc.*, No. 1:12-cv-552, 2012 WL 5903126, at *3 (S.D. Ohio Nov. 26, 2012) (where manufacturer and customer are in the same suit, the "customer suit exception is therefore inapplicable"); *Dekalb Genetics Corp. v. Syngenta Seeds, Inc.*, No. 4:06-cv-1191-ERW, 2007 WL 1223510, at *2 (E.D. Mo. Apr. 24, 2007) ("[s]everance and transfer are not appropriate where the court retains jurisdiction over a party central to the dispute.") (citing *Indianapolis Motor Speedway Corp. v. Polaris Indus., Inc.*, 2000 WL 777874, at *2 (S.D. Ind. June 15, 2000)); *Privasys*, 2007 WL 3461761, at *3 (The "customer suit" exception does not apply were "plaintiff has brought suit against both the supplier and its customers in the same suit and in the same district").

particular, significant resources were devoted to formulating a schedule….The Court sees no justification here to discard the schedule adopted at the end of this process.[21]

This factor should weigh in favor of denying the requested stays and permitting the joint schedule to which the parties agreed to go forward.

### C. RMII'S CLAIMS AGAINST MITEK SHOULD NOT BE TRANSFERRED

At the outset, RMII has set forth why severance and stay of Bank Defendants is not proper. Defendants request transfer **only** if Bank Defendants are severed and stayed. Because they should not be severed and stayed, transfer also should be denied.

If severance and stay is granted, the appropriate factors governing transfer analysis are set forth by the Third Circuit in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Based on an analysis of the *Jumara* factors, Mitek's request for a transfer should be denied

### 1.  *Plaintiff's Choice of Forum.*

This Court has stated that "[t]he burden of establishing the need for transfer ... rests with the movant" and that, "the plaintiffs choice of venue should not be lightly disturbed."[22] "Regardless of whether this District is or is not a plaintiff's 'home turf,' … the defendant must show that the balance of convenience is strongly in its favor in order to justify a transfer of venue."[23] RMII's choice of venue is not entitled to less deference based on Defendants' characterization of RMII as a "patent holding company" and being "solely in the business of monetizing patents." 617 Action D.I. 27 at 4, 12. A plaintiff's status as a patent enforcement company does not justify "disregard[ing] the privilege of choosing a venue that has historically been accorded

---

[21] *Cooper Notification, Inc. v. Twitter, Inc.*, No. No. 09-cv-865-LPS, 2010 WL 5149351, at *3 (D. Del. Dec. 13, 2010); *see also SoftView LLC v. Apple Inc.*, No. 10-cv-389-LPS, 2012 WL 3061027, at *4 (D. Del. July 26, 2012).

[22] *Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367, 371-72 (D. Del. 2012).

[23] *Pragmatus AV, LLC v. Yahoo! Inc.*, No. 11-cv-902-LPS-CJB, 2012 WL 4889438, at *5 (D. Del. Oct. 15, 2012).

plaintiffs."[24]

Since Mitek (and each of Bank Defendants) is incorporated in Delaware,[25] this Court's reasoning in *Helicos* is applicable and weighs heavily against transfer: "[B]ecause all of the defendants are Delaware corporations, it is a venue where all of the defendants could be sued."[26] "[T]he court starts with the premise that a defendant's state of incorporation has always been a predictable, legitimate venue for bringing suit and that a plaintiff, as the injured party, generally has been accorded the privilege of bringing an action where he chooses."[27] As in *Helicos*, where this Court declined to transfer for a defendant that was incorporated in Delaware, but the majority of its employees were in San Diego, California, the Court should deny transfer here.[28] RMII's decision to sue the Defendants in the state of their incorporation weighs heavily against transfer to the Southern District of California.

   2.   *Defendant Mitek's forum preference.*

   "Under Third Circuit law, Defendants' preference for an alternative forum is not given the same weight as Plaintiff's preference."[29] Mitek's current choice of forum in this case is not consistent with its past litigation practices and preferences. Mitek sued USAA regarding the same mobile deposit features in Delaware.[30] Mitek's briefing in that case opposing USAA's motion to transfer stated that "[c]hoosing a Delaware forum was a sensible decision by two sophisticated companies, because Delaware provides a highly-regarded forum for technology

---

[24] *Helicos Biosciences Corp.*, 858 F. Supp. 2d at 373.

[25] *See* Howard Dec. Ex. V.

[26] 858 F. Supp. 2d at 373.

[27] *Wireless Media Innovations, LLC v. LeapFrog Enterprises, Inc.*, No.13-cv-1545-SLR-SRF, 2014 WL 1203035, at *1 (D. Del. Mar. 20, 2014) (internal citations and quotations omitted).

[28] 858 F. Supp. 2d at 369. ("[Defendant] has approximately 2,000 employees worldwide, with most of them (approximately 1,400) working in or near San Diego, California and the rest working in [Defendant's] commercial offices located in seven countries.").

[29] *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 755 (D. Del. 2012).

[30] *Mitek Systems, Inc. v. United Services Automobile Association*, Case 1:12-cv-00462-GMS.

disputes and also gives neither party a perceived hometown advantage."[31] Mitek has also brought suit for patent infringement in Delaware against two other entities, including one that was incorporated in Delaware, but had its principal place of business in New York and another incorporated and having its principal place of business in Israel.[32] In that case, Mitek had its choice of venue and affirmatively selected Delaware. Mitek cannot now argue that Delaware is an inconvenient forum. In light of these facts, Mitek's current choice of forum should be given no weight.

   3.   *Where the claims arose.*

   Mitek cites *Beacon Nav. GmbH v. Chrysler Grp. L.L.C.* for the proposition that RMII's claims against Mitek arose in California, where Mitek develops the accused products. But that Court stated: "[A]s a matter of law, a claim for patent infringement arises whenever someone has committed acts of infringement, to wit, '***makes, uses, offers to sell, or sells*** any patented invention' without authority" and that "[a]ccordingly, where the defendant in a patent infringement action operates on a national level, this factor is often neutral."[33] RMII's claims against Mitek arise, in part, from its sales of the accused products to Bank Defendants who are located in and have heavy ties to the district of Delaware. In finding that this factor weighs against transfer, this Court stated: "If [Defendant] offers to sell or sells any of its allegedly infringing products in Delaware (and there is no indication of record to the contrary), the patent claims at issue can be said to have arisen in Delaware."[34] This factor weighs against transfer.

---

[31] *Id.*, D.I. 9 at 1.
[32] *Mitek Systems, Inc. v. TIS America, Inc. and Top Image Systems, Ltd.*, Case No. 1:12-cv-01208-RGA, 2014 WL 3891237 (D. Del. Aug. 6, 2014).
[33] *Beacon Nav. GmbH v. Chrysler Grp. L.L.C.*, No. 11-CV-921 GMS, 2013 WL 1163943, at *6 (D. Del. Mar. 20, 2013) (emphasis added) (internal citations omitted).
[34] *Cellectis S.A. v. Precision Biosciences, Inc.*, 858 F. Supp. 2d 376, 381 (D. Del. 2012).

### 4. *The convenience of the parties.*

In analyzing this factor, Delaware courts have looked to: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal."[35]

Transferring the case to the Southern District of California would entail RMII's witnesses traveling cross country. Mitek is in a much greater financial position to bear these costs than RMII, despite Mitek's assertions to the contrary.[36] There is "no real dispute that [Defendant] is a larger company in terms of both its physical and financial condition," and this factor weighs against transfer.[37] The convenience of the parties does not favor transfer.

### 5. *The convenience of the witnesses.*

The location of witnesses potentially relevant to this case does not weigh in favor of transfer. In fact, this consideration only applies "to the extent that the witnesses may actually be unavailable for trial in one of the fora."[38] Instead of demonstrating the applicability of this factor and that it favors transfer, Mitek ***concedes*** it is "unaware of any witness that would be unavailable for trial in Delaware." 617 Action D.I. 27 at 18. The Court should find that this factor does not weigh in favor of a transfer.

### 6. *Location of books and records.*

Whether this factor weighs in favor of a transfer depends on the extent that the files at issue

---

[35] *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 731 (D. Del. 2012) (citing *Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, No. 12-462 GMS, 2012 WL 3777423, at *1 (D. Del. Aug. 30, 2012)).

[36] D.I. 30 at 5 (Mitek's "[t]otal revenue for fiscal 2014 was $19.2 million compared to $14.8 million in fiscal 2013, driven by continued strong demand for Mitek's Mobile Deposit® product.").

[37] *Cellectis S.A.*, 858 F. Supp. 2d at 382.

[38] *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

could not be produced in the alternative forum.[39] RMII's documents and records are located primarily on the east coast, in Florida and potentially at the offices of its prosecuting attorneys in New York. Though Mitek states that it maintains all relevant evidence in San Diego, it has not given any reason why these documents cannot be produced in Delaware. Mitek admits that in this electronic age, the factor relating to the location of books and records is of reduced significance. 617 Action D.I. 27 at 19. In one of Mitek's prior cases in Delaware, Mitek argued that "as the courts have recognized, advances in technology have rendered *irrelevant* any argument that the location of evidence should determine venue."[40] Mitek failed to show any reason why production of documents and materials cannot be made in Delaware, and this factor cannot weigh in favor of transferring the case to the Southern District of California.

### 7. *Practical considerations.*

The parties have already advanced this case. They have conducted their Rule 26(f) conference, filed a proposed scheduling order with this Court containing deadlines that would govern the case (617 Action D.I. 37), attended an in-person Scheduling Conference with the Court, and received deadlines from the Court for discovery conferences, *Markman* hearing, and trial. The same is not true if the case were to be transferred to Mitek's proposed venue.

Mitek's assertions relating to travel to Delaware fall short, as Mitek previously argued to *keep a case in Delaware* citing *CentiMark Corp. v. Jacobsen*, in which the Court stated:

> As for the practical considerations making the litigation easy, expeditious or inexpensive, this factor is again neutral. In short, whether the litigation proceeds in Pennsylvania or in Georgia, someone is going to have to travel somewhere. We agree with CentiMark that teleconferencing, video-depositions, and electronic

---

[39] *Id.*

[40] Citing, *e.g.*, *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 571 (D. Del. 2001) ("With new technologies for storing and transmitting information, the burden of gathering and transmitting documents 3,000 miles is probably not significantly more than it is to transport them 30 miles.").

**OPPOSITION TO DEFENDANTS' MOTION TO SEVER, STAY, AND TRANSFER–**       **Page 19**

filing are now ubiquitous. Thus we find this factor has taken on less importance than it might have been given twenty years ago.[41]

Mitek has not met its burden to show that this factor favors transfer.

### 8. *Relative administrative difficulty*

Mitek admits this factor does not weigh in favor of transfer, stating that "there is a slightly lower median time to trial in Delaware." D.I. 27 at 20.

### D.  Summary of *Jumara* factors.

The *Jumara* factors weigh against transfer or are, at best, neutral Mitek has not met its burden to show the factors favor transfer. Plaintiff's choice of forum is entitled to deference, and all Defendants are incorporated in Delaware. Mitek has chosen to litigate in Delaware in the past and has fought transfer from the District, and its current litigation preference is entitled to little weight. The "location of books and records" factor is irrelevant and outdated and Mitek has produced no evidence that they could not produce the documents in Delaware. The "convenience of witnesses" factor does not apply as both parties are unaware of witnesses that would be unavailable for trial in Delaware. RMII's claims arise in both Delaware and California, so this factor does not weigh in favor of transfer. The "practical considerations" should weigh in favor of denying transfer, as the parties already have made progress on this Court's docket and Mitek cannot claim that the expense associated with litigating in Delaware is unreasonable. Lastly, Mitek admits that the time to trial in Delaware is shorter than in the transferee district.

## VI. CONCLUSION

RMII respectfully urges the Court to deny the severance and stays requested by Bank Defendants and find that a transfer of the case against Mitek to the Southern District of California is unwarranted.

---

[41] No. CIV.A. 11-1137, 2011 WL 6000719, at *7 (W.D. Pa. Nov. 30, 2011).

Dated: December 8, 2014        STAMOULIS & WEINBLATT LLC

*/s/ Richard C. Weinblatt*
Richard C. Weinblatt #5080
Stamatios Stamoulis #4606
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
Telephone: (302) 999-1540
Facsimile: (302) 762-1688
weinblatt@swdelaw.com
stamoulis@swdelaw.com

*Of Counsel*:

Michael W. Shore*
Alfonso Garcia Chan*
Andrew M. Howard*
Dustin R. Lo*
**SHORE CHAN DEPUMPO LLP**
901 Main Street, Suite 3300
Dallas, TX 75202
Telephone: (214) 593-9110
Facsimile: (214) 593-9111
mshore@shorechan.com
ahoward@shorechan.com
achan@shorechan.com
dlo@shorechan.com

* Admitted Pro Hac Vice
**ATTORNEYS FOR PLAINTIFF**
**ROTHSCHILD MOBILE IMAGING INNOVATIONS, LLC**