IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROTHSCHILD MOBILE IMAGING INNOVATIONS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> MITEK SYSTEMS, INC., JPMORGAN CHASE & CO. and JPMORGAN CHASE BANK, N.A. <br><br> Defendants | C.A. No. 14-617-GMS |
| ROTHSCHILD MOBILE IMAGING INNOVATIONS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> BANK OF AMERICA CORPORATION, BANK OF AMERICA, N.A., and MITEK SYSTEMS, INC. <br><br> Defendants. | C.A. No. 14-1142-GMS |
| ROTHSCHILD MOBILE IMAGING INNOVATIONS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> CITIGROUP, INC., CITIBANK, N.A. and MITEK SYSTEMS, INC. <br><br> Defendants. | C.A. No. 14-1143-GMS |

|                                         | )   |
| --------------------------------------- | --- |
| ROTHSCHILD MOBILE IMAGING                | )   |
| INNOVATIONS, LLC,                        | )   |
|                                         | )   |
|     Plaintiff,                           | )   |
|                                         | )   |
|     v.                                   | )   C.A. No. 14-1144-GMS |
|                                         | )   |
| WELLS FARGO & COMPANY,                   | )   |
| WELLS FARGO BANK, N.A. and               | )   |
| MITEK SYSTEMS, INC.                      | )   |
|                                         | )   |
|     Defendants.                          | )   |
|                                         | )   |

## MEMORANDUM OPINION

### I. INTRODUCTION

Before the court are four patent infringement cases filed by plaintiff Rothschild Mobile Imaging Innovations, LLC ("RMII") alleging direct, indirect, and willful infringement of U.S. Patent Nos. 7,450,163; 7,995,118; 7,456,872; and 7,991,792 ("patents-in-suit") against multiple defendants. (C.A. No. 14-617-GMS; C.A. No. 14-1142-GMS; C.A. No. 14-1143-GMS; C.A. No. 14-1144-GMS.[1]) In all four cases, RMII has sued Mitek Systems, Inc. ("Mitek"). Additionally, in each of the four cases, RMII has named one of the four largest banks in the nation— JPMorgan Chase & Co., JPMorgan Chase Bank, N.A. (collectively, "Chase"), Bank of America Corp., Bank of America N.A. (collectively, "Bank of America"), Citigroup, Inc., Citibank N.A. (collectively, "Citi"), and Wells Fargo & Co., Wells Fargo Bank N.A. (collectively, "Wells Fargo") (collectively, the "Bank" defendants)—as a co-defendant. Numerous motions have been filed in all four cases and the court presently addresses: (1) whether to sever the infringement claims against the Bank defendants from the infringement

---

[1] All related cases were originally pending before the Honorable Sue L. Robinson. The case was reassigned on April 8, 2015.

1

claims against Mitek; (2) if the claims are severed, whether to stay the infringement claims against the Bank defendants until resolution of RMII's infringement claims against Mitek; and (3) if the claims are severed and stayed, whether to transfer RMII's infringement claims against Mitek to the Southern District of California. For the reasons that follow, the court will sever the claims against the Bank defendants and stay the infringement claims against the Bank defendants until RMII's infringement claims against Mitek are resolved. The court denies Mitek's motion to transfer the remaining portions of the case to the Southern District of California. The court's reasoning follows.

## II. BACKGROUND

RMII is a limited liability company having a principal office in Bay Harbor Islands, Florida. (D.I. 7, ¶ 1.[2]) RMII is a patent holding company created by Leigh Rothschild. (D.I. 28, Ex. 1.) Mr. Rothschild is the named inventor of the patents-in-suit. (D.I. 7, Exs. A, B, C, D.)

Mitek is a Delaware corporation with its principle place of business in San Diego, California. (D.I. 7, ¶ 2.) Mitek markets itself as a company with patented mobile photo technology that can extract relevant data from captured images of personal and financial documents. (D.I. 28, Ex. 3.) Mitek licenses this technology to thousands of financial institutions. (*Id.*)

In the summer of 2014, RMII initiated this litigation against Chase and Mitek.[3] (D.I. 7.) On September 8, 2014, RMII filed three additional cases alleging infringement of the patens-in-suit. RMII first sued Bank of America and Mitek. (C.A. No. 14-1142-GMS (the "1142 Action"), D.I. 1.) Next, RMII sued Citi and Mitek. (C.A. No. 14-1143-GMS (the "1143

---

[2] Citations are to C.A. No. 14-617-GMS unless otherwise noted.

[3] To clarify, RMII initially sued Mitek on May 16, 2014 as a lone defendant. (C.A. No. 14-617-GMS, D.I. 1.). Soon thereafter, on June 12, 2014 RMII filed its First Amended Complaint and included JPMorgan Chase as co-defendant. (*Id.*, D.I. 7.)

2

Action"), D.I. 1.) And third, RMII sued Wells Fargo and Mitek. (C.A. No. 14-1144-GMS (the "1144 Action"), D.I. 1.)

The allegations in RMII's four infringement cases are essentially identical. The accused products in each are Mitek's mobile imaging products and services and the Banks' respective mobile banking application. RMII accuses the following Mitek products of infringing the patents-in-suit: "Mobile Deposit," "Mobile Photo Bill Pay," "Mobile Photo Account Opening," "Mobile Photo Payments," "Mobile Photo Balance Transfer," "Mobile Photo Account Funding," "Mobile Insurance Quote," and "Mobile Imaging Platform" (collectively, "Mitek's Mobile Imaging Instrumentalities"). (C.A. No. 14-617-GMS, D.I. 7, ¶ 12; 1142 Action, D.I. 1, ¶ 12; 1143 Action, D.I. 1, ¶ 12; 1144 Action, D.I. 1, ¶12.) Additionally, RMII accuses the Bank defendants of infringement through the use of their respective mobile banking application: "Chase Mobile," "Bank of America–Mobile Banking," "Citi Mobile," and "Wells Fargo Mobile" (collectively, "the Mobile Banking Applications"). (*Id.*, ¶ 13.)

On November 10, 2014, Chase filed a motion to sever the infringement claims against it from the infringement claims against Mitek and to stay the infringement claims against it until resolution of the Mitek claims. (D.I. 26.) On November 19, 2014, the other Bank defendants filed similar motions and notices to join Chase's motion to sever and stay. (1142 Action, D.I. 20; 1143 Action, D.I. 23; 1144 Action, D.I. 23.) As such, pending before the court is a joint motion to sever the Bank defendants from their respective cases and stay the infringement claims against them until resolution of RMII's infringement claims against Mitek. Additionally, Mitek asks the court to transfer RMII's infringement claims to the United States District for the Southern District of California.[4] (D.I. 26.)

---

[4] Mitek has also filed a motion to dismiss RMII's infringement claims in the 1142, 1443, and 1144 Actions for being duplicative of the 617 Action. (1142 Action, D.I. 15, 59, 61; 1143 Action, D.I. 11, 65, 67; 1144 Action,

3

## III. ANALYSIS

### A. Motion to Sever

On November 10, 2014, Chase filed a motion to sever the infringement claims against it from the infringement claims against Mitek. (D.I. 26.) The remaining Bank defendants join in this motion to sever and motion to stay. (1142 Action, D.I. 20; 1143 Action, D.I. 23; 1144 Action, D.I. 23.)

When a patent holder sues multiple accused infringers, it may be proper for the court to sever certain claims against one or more of the accused infringers. *See* Fed. R. Civ. P. 21. In patent cases, motions to sever are governed by Federal Circuit law because the court's assessment of joinder necessarily requires an analysis of the accused acts of infringement. *In re EMC Corp.*, 677 F.3d 1351, 1354 (Fed. Cir. 2012). Indeed, "the court has virtually unfettered discretion in determining whether or not severance is appropriate." *Grigsby v. Kane*, C.A. No. 99-2083, 2003 WL 24008976, at *2 (M.D. Pa. Mar. 19, 2003).

In assessing whether claims should be severed, courts consider whether: (1) the claim to be preserved is peripheral to the remaining claims; (2) the adjudication of the remaining claims is potentially dispositive of the severed claim; and (3) the transfer of the remaining claims is warranted under 28 U.S.C. § 1404(a). *See MGT Gaming, Inc. v. WMS Gaming, Inc.*, 978 F. Supp. 2d 647, 664 (S.D. Miss. 2013); *Innovative Automation, LLC v. Audio Video & Video Labs, Inc.*, No. 6:11-CV-234 LED-JDL, 2012 WL 10816848, at *4 (E.D. Tex. May 30, 2012); *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 632 (E.D. Va. 2003); *LG Elecs., Inc. v. First Int'l Computer, Inc.*, 138 F. Supp. 2d 574, 584–85 (D. N.J. 2001).

---

D.I. 8, 21, 62, 64.) In the alternative, Mitek asks the court to dismiss the willfulness allegations filed by RMII in those three cases because the complaints fail to allege pre-suit knowledge of the patents-in-suit. The court adopts Judge Robinson's legal analysis in her Opinion dated March 20, 2015, and finds dismissal of the allegations of willfulness is appropriate. (D.I. 51.) The court denies without prejudice the portion of Mitek's motions to dismiss requesting dismissal of the actions for being duplicative.

4

### 1. Peripheral Claims

"A patent infringement claim against a retailer, distributor, or customer of infringing products is peripheral to a claim against a manufacture." *MGT Gaming*, 978 F. Supp. 2d at 664. When a plaintiff sues both the manufacturer/supplier of the accused technology, as well as a customer of that technology, the manufacturer is deemed the "true defendant" and the real party in interest. *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014). Courts make this distinction between the manufacturer/supplier and the customer because "[i]t is naïve and inaccurate to assume that the interest of [] the manufacturer and distributor of the [accused] product or system, and the party who may have to indemnify its customers' damages, is the same as its customers." *Teleconference Sys. v. Proctor & Gamble Pharm., Inc.*, 676 F. Supp. 2d 321 (D. Del. 2009). Put another way, "[t]he rationale behind severing and staying in these circumstances is that 'second-hand entities like retailers or distributors are not involved and would not have substantive knowledge about the patent infringement, which would begin at the design and manufacture stages.'" *Richmond v. Lumisol Elec. Ltd.*, No. CIV.A. 13-1944 MLC, 2014 WL 1716447, at *4 (D. N.J. Apr. 30, 2014) (citation omitted). Indeed, "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Honeywell Int'l., Inc. v. Audiovox Commc'ns Corp.*, C.A. No. 04-1337, 2005 WL 2465898, at *1 (D. Del. 2005).

Here, the infringement claims against the Bank defendants are peripheral to the claims of infringement against Mitek because the Banks appear to have only been customers of Mitek's allegedly infringing technology. RMII attempts to argue that the Bank defendants' mobile applications are separate and distinct accused products from the Mitek Mobile Imaging Instrumentalities; this argument does not hold water. (D.I. 39 at 8.) As the Banks correctly point

5

out, RMII's argument contradicts prior assertions it has made throughout this litigation. In all four complaints, RMII asserts the allegations against Defendants involve "the same or similar related and commonly derived instrumentalities." (D.I. 7, ¶ 13; *see also* 1142 Action, D.I. 1, ¶ 13; 1143 Action, D.I. 1, ¶ 13; 1144 Action, D.I. 1, ¶ 14.) RMII has also asserted the "Chase Mobile application infringed the [patents-in-suit] through its use of Mitek's Mobile Imaging Instrumentalities." (1144 Action, D.I. 13 at 3.) Consequently, the court accepts RMII's own allegations, and determines the infringement claims against the Banks are peripheral to the infringement claims against Mitek.

### 2. Potentially Dispositive of the Severed Claims

Adjudication of RMII's patent infringement claim against Mitek will dispose of any claims against the Bank defendants. As customers of the manufacturer defendants, the Bank defendants are liable only if a court were to find Mitek liable. *See LG Elecs.*, 131 F. Supp. 2d at 812. If the court finds Mitek liable and RMII collects royalties from it, then RMII cannot in turn collect royalties from the entities to whom Mitek sold the products. *See Intel Corp. v. ULSI Sys. Tech. Inc.*, 995 F.2d 1566 (Fed. Cir. 1993) (holding that a patentee can collect only one royalty from a patent infringement). On the other hand, if the court holds that Mitek did not infringe the patents-in-suit, RMII's case against the Bank defendants for using such products will be greatly diminished. Adjudication of the claims against Mitek will dispose of the claims against the Bank defendants as users of the products. The presence of the Bank defendants as parties neither adds nor detracts from RMII's patent infringement claim against Mitek. The claims against the Bank defendants are hereby severed and stayed.[5]

---

[5] Because the court has granted the Bank defendants' motion to sever RMII's infringement claims against it from the infringement claims against Mitek, the court now turns to the Bank defendants' motion to stay until resolution of the infringement claims against Mitek.

6

### 3. Transfer Analysis

Because the court has granted the Bank defendants' motions to sever and stay RMII's infringement claims against them, the court now turns to Mitek's motion to transfer the infringement claims against it to the Southern District of California. (D.I. 26.)

When faced with a defendant's motion to transfer venue pursuant to 28 U.S.C. § 1404(a), the Third Circuit's decision in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995) is

---

The court has broad discretionary power to grant or deny a motion to stay. *Vehicle IP, LLC v. WalMart Stores, Inc.*, Civ. No. 10-503-SLR, 2010 WL 4823393, at *1 (D. Del. Nov. 22, 2010); *See Helios Software, LLC v. Spectorsoft Corp.*, Civil Action No. 15-20-LPS-CJB, 2015 WL 1387583, at *1 (D. Del. Mar. 25, 2015); *Teleconference Sys. v. Proctor & Gamble Pharm., Inc.*, 676 F. Supp. 2d 321, 326 (D. Del. 2009) (explaining the "court has the discretion to stay a case if the interests of justice so require"). This court considers three factors when deciding a motion to stay: (1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage. *See Pragmatus Telecom, LLC v. Advanced Store Co.*, No. CIV.A. 12-088-RGA, 2012 WL 2803695, at *1 (D. Del. July 10, 2012).

In this case, the factors weigh in favor of granting the Bank defendants' motion to stay. First, granting the stay will undoubtedly simplify the issues in this case. RMII initially brought this case on the premise that Mitek's Mobile Imaging Instrumentalities infringe its patented technology. RMII later filed suit against the Bank defendants for incorporating that technology into their Mobile Banking Applications. RMII argues granting the stay will not simplify the issues because the Mobile Banking Applications are stand-alone products that merely incorporate Mitek's technology, but independently infringe the patents-in-suit. (D.I. 39 at 12–14.) The court does not find this a persuasive reason to deny the pending motion to stay. As noted above, RMII states that "the Chase Mobile application infringed the [patents-in-suit] through its use of Mitek's Mobile Imaging Instrumentalities." (1144 Action, D.I. 13 at 3.) For that reason alone, the court finds the infringement issues raised by RMII against Chase—and by implication the other Bank defendants—will be simplified once a decision is made about Mitek's alleged infringement. Simply put, there is no getting around the fact that the Bank defendants are alleged to incorporate Mitek's technology in its Mobile Banking Applications, and a resolution of whether that incorporated technology infringes will surely simplify the issues moving forward. This factor weighs in favor of granting the stay. Second, this litigation is in a nascent stage. A trial date is set for April 2017—nearly two years from now. (D.I. 54 at 11.) Litigation is still getting underway. This factor weighs in favor of granting the Bank defendants' motion to stay. Third, no clear tactical disadvantage or undue prejudice against RMII would exist by granting the stay. Indeed, in cases where plaintiffs are in the business of monetizing patents, rather than practicing—as is the case with RMII—any purported harm can be "fully compensated by monetary damages." *Pragmatus*, 2012 WL 2803695, at *2 (D. Del. Nov. 22, 2010). Here, RMII does not practice the patents-in-suit, nor does RMII assert it practices the patents-in-suit. Rather, RMII's averments are based on tactical disadvantages it will face should the court grant the stay. For example, RMII argues "[a] stay as to Bank Defendants would remove RMII's ability to prove Bank Defendants' acts of *direct* infringement." (D.I. 39 at 12.) RMII's assertion is without merit. Should the court grant the stay, thereby leaving Mitek and RMII to litigate the infringement claims, RMII is not precluded from later challenging the Bank defendants for direct infringement. Put another way, granting the stay only puts the infringement claims against the Bank defendants on hold. RMII gives no reason for *why* it could not pursue direct infringement claims later on. Moreover, RMII asserts Mitek is in danger of going bankrupt, and therefore, RMII may end up with an unenforceable judgment. (*Id.*) RMII's reasoning is entirely speculative and is therefore rejected. RMII submits no reason for why it cannot obtain judgment from the Bank defendants down the road should a fact-finder determine the Mobile Banking Applications infringe the patents-in-suit. As such, this factor also weighs in favor of granting the stay. Consequently, a stay is appropriate.

7

instructive. *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1222–23 (Fed. Cir. 2011) ("In reviewing a district court's ruling on a motion to transfer pursuant to § 1404(a), we apply the law of the regional circuit . . ."). "[C]ourts confronting a motion to transfer first ask whether the action could have been brought in the proposed transferee venue and then determine whether transfer to a different forum would best serve the interests of justice and convenience." *Smart Audio Tech., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 725 (D. Del. 2012). "With regard to the second step of this inquiry, *Jumara* instructed district courts look to the various private and public interests protected by § 1404 rather than to any 'definitive formula.'" *Id.* (citing *Jumara*, 55 F.3d at 879). The court turns to the *Jumara* analysis because neither party argues the case at hand could not have been filed in the Southern District of California.

### 1. Private Interest Factors

Private factors discussed in *Jumara* include: (1) "plaintiff's forum preference as manifested in the original choice," (2) "the defendant's preference," (3) "whether the claim arose elsewhere," (4) "the convenience of the parties as indicated by their relative physical and financial condition," (5) "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora," and (6) "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." 55 F.3d at 879.

#### a. Plaintiff's Forum Preference

Although a plaintiff's choice of forum "is often granted significant weight in the § 1404(a) convenience analysis, the court has recognized that the plaintiff's forum preference merits less deference when the plaintiff has chosen to file suit outside its 'home turf.'" *Beacon*, 2013 WL 1163943, at *6; *see also In re Link_A_Media Devices, Corp.*, 662 F.3d 1221, 1222–23

8

(Fed. Cir. 2011) (when "a plaintiff brings its charges in a venue that is not its home forum" that "choice of forum is entitled to less deference").

RMII is a Florida corporation whose sole officer resides in Florida. In view of the foregoing, the court concludes that Mitek's forum selection is entitled to some degree of heightened deference, but not to "paramount consideration." *See Smart Audio Techs.*, 2012 WL 5865742, at *6; *AIP Acquisition LLC v. iBasis, Inc.*, No. 12-616-GMS, 2012 WL 5199118, at *3 (D. Del. Oct. 19, 2012).

### b. Defendant's Forum Preference

The next private interest factor to consider is the defendant's forum preference. *See Jumara*, 55 F.3d at 879. In this case, Mitek prefers to litigate in the Southern District of California, the district where it operates its principal place of business and headquarters. Mitek maintains no officers, employees, or documents in Delaware. (D.I. 30, ¶ 5.) Apart from its San Diego office, Mitek has offices in Wisconsin, North Carolina, Massachusetts, Ohio, and Florida. (*Id.*, ¶ 6.) Mitek employs one person in each of those offices. (*Id.*) All of Mitek's design and development work is performed at Mitek's headquarters in San Diego. (*Id.*, ¶ 7.) Mitek's technical, business, marketing, and financial documents are kept at its San Diego office. (*Id.*)

RMII argues that Mitek's "current choice of forum in this case is not consistent with its past litigation practices and preferences." (D.I. 39 at 16.) Mitek asserts that this same logic applies to a company owned by RMII's principal that recently filed a patent infringement action in the Southern District of California. (D.I. 43 at 8.)

The court takes no position as to whether either side has taken contradictory positions in prior litigation and, as appropriate, reviews the facts of this case individually. In light of the

court's decision to stay and sever the Bank defendants the active parties' connection to Delaware is simply based on incorporation. As such, this factor weighs slightly in favor of transfer.

### c. Whether the claim arose elsewhere

"[A]s a matter of law, a claim for patent infringement arises whenever someone has committed acts of infringement, to wit, 'makes, uses, offers to sell, or sells any patented invention' without authority." *Cellectis S.A. v. Precision Biosciences, Inc.*, 858 F. Supp. 2d 376, 381 (D. Del. 2012) (quoting 35 U.S.C. § 271(a)); *see also Smart Audio Techs.*, 2012 WL 5865742, at *7. Accordingly, where the defendant in a patent infringement action operates on a national level, this factor is often neutral. This Court has recognized that in patent infringement cases, "[to] some extent, claims ar[i]se where the allegedly infringing products [a]re designed and manufactured." *Beacon*, 2013 WL 1163943, at * 6 (citing *Wacoh Co. v. Kionix, Inc.*, 845 F.Supp.2d 597, 602 (D. Del. 2012)). Mitek argues that the accused products were developed and made at Mitek's headquarters in San Diego, within the Southern District of California. RMII asserts that the claims against Mitek arise, in part, from its sales of the accused products to the Bank defendants who are located in and have heavy ties to the district of Delaware. (D.I. 36 at 17.) The court concludes that this factor is neutral.

### d. Convenience of the Parties

In this assessment, the court weighs several considerations, including: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Smart Audio Techs.*, 2012 WL 5865742, at *7 (internal quotation omitted). Thus,

10

the court is tasked with assessing the "convenience of the parties as indicated by their relative physical and financial condition." *See Jumara*, 55 F.3d at 879.

The decision to incorporate in Delaware suggests that the inconvenience of litigating here is somewhat less than the court would ordinarily presume it to be in this case. Therefore, the court finds this factor to be neutral.

### e. Convenience of the Witnesses

The next *Jumara* factor is "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." 55 F.3d at 879. There is nothing in the record to suggest that necessary witnesses will be unavailable in one fora or the other. This factor is neutral.

### f. Location of Books and Records

Finally, the court accounts for "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879. The court has recognized that "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009); *see also Smart Audio Techs.*, 2012 WL 5865742, at \*9. Because Mitek is physically located in the Southern District of California, it is reasonable to presume that much of the evidence will be found there. Though modern technology makes the task of transporting electronic evidence far less onerous, the court must nevertheless accord at least some weight to this factor. *See In re Link_A_Media Devices Corp.*, 662 F.3d at 1224; *Smart Audio Techs.*, 2012 WL 5865742, at \*9. As such, this factor weighs slightly in favor of transfer.

11

## 2. Public Interest Factors

Public interest factors include: (1) "the enforceability of the judgment," (2) "practical considerations that could make the trial easy, expeditious, or inexpensive," (3) "the relative administrative difficulty in the two fora resulting from court congestion," (4) "the local interest in deciding local controversies at home," and (5) "the familiarity of the trial judge with the applicable state law in diversity cases." *Jumara*, 55 F.3d at 879–80. The parties have only disputed the practical considerations and relative administrative difficulty factors.

### a. Practical Considerations

Litigation efforts are ongoing in Delaware. For example, the parties have attended an in-person scheduling conference and, subsequent to the case being reassigned, agreed upon a revised schedule to conform to this court's procedures. (D.I. 53.) The deadline to file amended pleadings has passed and a *Markman* hearing is scheduled for March 20, 2016. (*See id.*) Further, the court has decided to sever and stay three related actions against the Bank defendants during the pendency of this action. As such, the practical considerations in having the same court overseeing all related actions weighs against transfer.

### b. Relative Administrative Difficulty

Finally, the court also considers "the relative administrative difficulty in the two fora resulting from court congestion." *Jumara*, 55 F.3d at 879. Mitek asserts that this factor is neutral because the parties have recently agreed to a trial date that occurs 35 months after the Complaint was filed which mirrors the highest median time to trial in the Southern District of California over the six years ending June 2014. (D.I. 43 at 10.) The court agrees and finds this factor is neutral.

### 3. Transfer Analysis Summary

Considering the *Jumara* factors as a whole, the court concludes that the defendants have not met their burden of demonstrating that the interests of justice and convenience strongly favor transfer. Only Mitek's forum preference and the location of relevant books and records weighs in favor of transfer and, as the court explained above, those preferences do not warrant maximum deference in this case. On the other hand, several factors weigh against transfer: RMII's choice of forum, whether the claims arose elsewhere, and practical considerations that might make trial easy, expeditious, and less expensive.

## IV. CONCLUSION

For the reasons discussed above, the court will grant the pending motions to sever and stay the Bank defendants in all actions and deny Mitek's Motion to Transfer the remaining claims to the Southern District of California pursuant to 28 U.S.C. § 1404(a).

Dated: July 31, 2015

UNITED STATES DISTRICT JUDGE