# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROTHSCHILD MOBILE IMAGING INNOVATIONS, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 14-617-GMS |
| MITEK SYSTEMS, INC., JPMORGAN CHASE & CO. and JPMORGAN CHASE BANK, N.A., | ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) | |
| ROTHSCHILD MOBILE IMAGING INNOVATIONS, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 14-1142-GMS |
| BANK OF AMERICA CORPORATION, BANK OF AMERICA, N.A., NCR CORPORATION and MITEK SYSTEMS, INC., | ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) | |
| ROTHSCHILD MOBILE IMAGING INNOVATIONS, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 14-1143-GMS |
| CITIGROUP INC., CITIBANK, N.A., NCR CORPORATION and MITEK SYSTEMS, INC., | ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) | |

ROTHSCHILD MOBILE IMAGING )
INNOVATIONS, LLC, )
)
   Plaintiff, )
)  C.A. No. 14-1144-GMS
v. )
)  JURY TRIAL DEMANDED
WELLS FARGO & COMPANY, )
WELLS FARGO BANK, N.A., FISERV, INC. )
and MITEK SYSTEMS, INC., )
)
   Defendants. )

## PLAINTIFF'S BRIEF IN OPPOSITION TO MITEK'S MOTION FOR ATTORNEYS' FEES AND EXPENSES[1]

Richard C. Weinblatt #5080
Stamatios Stamoulis #4606
STAMOULIS & WEINBLATT LLC
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
Telephone: (302) 999-1540
Facsimile: (302) 762-1688
weinblatt@swdelaw.com
stamoulis@swdelaw.com

*Of Counsel*:

Michael W. Shore
Alfonso Garcia Chan
Andrew M. Howard
**SHORE CHAN DEPUMPO LLP**
901 Main Street, Suite 3300
Dallas, TX 75202
Telephone: (214) 593-9110
Facsimile: (214) 593-9111
mshore@shorechan.com
achan@shorechan.com
ahoward@shorechan.com

**ATTORNEYS FOR PLAINTIFF**
**ROTHSCHILD MOBILE IMAGING INNOVATIONS, LLC**

---

[1] Plaintiff files this Opposition in the alternative to, and without waiving, its Motion to Strike Mitek's Motion for Attorneys' Fees and Expenses (D.I. 102, 103). Because Defendant's motion provides neither the Court nor Plaintiff with adequate notice of the fees sought, or even an estimate thereof, it violates Federal Rule of Civil Procedure 54(d), and should be struck.

## TABLE OF CONTENTS

I.  STAGE OF THE CASE........................................................................................ 1

II.  SUMMARY OF ARGUMENT ............................................................................ 1

III.  STATEMENT OF FACTS ................................................................................... 3

IV.  ARGUMENT ....................................................................................................... 7

    A. The case was filed in good faith.......................................................................... 7

        1.  Defendant has not shown Plaintiff's filing of the cases was in bad faith
           or unjustified.................................................................................................. 8

        2.  Defendant has not shown that Plaintiff's conduct before the PTAB was
           inequitable. ................................................................................................. 11

        3.  Plaintiff did not litigate the cases in an unreasonable or vexatious manner. ....... 12

        4.  Plaintiff's counsel did not commit any form of misconduct. ............................ 14

        5.  Plaintiff was entitled to file an IPR petition against Defendant. ...................... 15

        6.  Defendant has shown no basis for deterrence. ................................................ 16

        7.  Defendant is not entitled to fees for IPR proceedings. .................................... 17

    B.  Fees against Shore Chan DePumpo LLP are unwarranted and unsupported by any
    authority.............................................................................................................. 18

V.  CONCLUSION.................................................................................................. 20

## TABLE OF AUTHORITIES

### CASES:

*AGC Networks, Inc. v. Relevante, Inc.*,
No. 14-308-LPS, 2015 WL 1517419 (D. Del. Mar. 31, 2015) .................................................. 14

*Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*,
369 F.3d 385 (4th Cir. 2004) ................................................................................................ 10

*Carroll v. ABM Janitorial Services-MID Atlantic, Inc.*,
970 F. Supp. 2d 292 (D. Del. 2013) ...................................................................................... 14

*Chambers v. Nasco, Inc.*,
501 U.S. 32 (1991) ................................................................................................................. 18

*Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*,
858 F.3d 1371 (Fed. Cir. 2017) ............................................................................................... 7

*Computer Software Protection, LLC v. Adobe Sys. Inc.*,
No. 12-451-SLR, 2015 WL 1517402 (D. Del. 2015) ................................................................ 9

*DermaFocus LLC v. Ulthera, Inc.*,
No. 15-654-SLR, 2016 WL 4263122 (D. Del. Aug. 11, 2016) ............................................... 14

*Dragon Intellectual Property, LLC v. AT&T Servs., Inc.*,
No 13-2061-RGA, 2016 WL 3746377 (D. Del. July 12, 2016) .............................................. 10

*Drone Tech., Inc. v. Parrot S.A.*,
2015 U.S. Dist. LEXIS 98829 (W.D. Pa. July 21, 2015) ...................................................... 17

*E2E Processing, Inc. v. Caxbela's Inc.*,
No 2:14-cv-36, 2016 WL 6217177, at *3 (E.D. Tex. Oct. 25, 2016). ..................................... 10

*Eon-Net LP v. Flagstar Bancorp.*,
653 F.3d 1314 (Fed. Cir. 2011) ............................................................................................. 16

*Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*,
279 F.3d 1022 (Fed. Cir. 2002) ............................................................................................... 7

*Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods, Inc.*,
790 F.3d 1369 (Fed. Cir. 2015) ............................................................................................. 10

*GMAC Bank v. HTFC Corp.*,
   248 F.R.D. 182 (E.D. Pa. 2008) ................................................................... 19

*Halo Electronics, Inc. v. Pulse Electronics, Inc.*,
   136 S. Ct. 1923 (2016) ................................................................................. 14

*Hockeyline, Inc. v. STATS LLC*,
   2017 WL 1743022 (S.D.N.Y. 2017) ............................................................ 10

*Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
   137 S. Ct. 954 (2017) ................................................................................... 13

*In re Miller*,
   730 F.3d 198 (3d Cir. 2013) ........................................................................ 10

*In re Prosser*,
   777 F.3d 154 (3d Cir. 2015) ........................................................................ 18

*In re Protegrity Corp.*,
   No. 3:15-md-2600, 2017 WL 747329 (N.D. Cal. 2017) ............................ 9, 12

*In re Prudential Ins. Co. Am. Sales Practice Litigation Agent Actions*,
   278 F.3d 175 (3d Cir.) ................................................................................. 18

*In re Schaefer Salt Recovery, Inc.*,
   542 F.3d 90 (3d Cir. 2008) .......................................................................... 11

*Inline Connection Corp. v. AOL Time Warner Inc.*,
   470 F. Supp. 2d 435 (D. Del. 2007) ............................................................ 15

*Intellect Wireless, Inc. v. HTC Corp.*,
   No. 09 C 2945, 2015 WL 136142 (N.D. Ill. Jan. 8, 2015) ......................... 17

*Jedi Techs., Inc. v. Spark Networks, Inc.*,
   2017 WL 3315279 (D. Del. 2017) ............................................................... 10

*Large Audience Display Sys., LLC v. Tennman Prods., LLC*,
   660 Fed. Appx. 966 (Fed. Cir. 2016) ......................................................... 1, 9

*Mass. Institute of Tech. v. Micron Tech., Inc.*,
   No. 15-10374, 2016 WL 3390690 (D. Mass. 2016) ................................... 10

*Nexans Inc. v. Belden Inc.*,
   Civ. No. 12-1491-SLR/SRF, 2017 WL 2303486 & n.7 (D. Del. May 26, 2017) ................... 12

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    134 S. Ct. 1749 (2014) ................................................................................ 7

*Orenshteyn v. Citrix Sys., Inc.*,
    341 Fed. Appx. 621 (Fed. Cir. 2009) ......................................................... 11

*Parallel Networks, LLC v. Kayak Software Corp.*,
    No. 2015-1681, 2017 WL 2859568 (Fed. Cir. July 5, 2017) ...................... 16

*PPG Indus., Inc. v. Celanese Polymer Specialties Co., Inc.*,
    840 F.2d 1565 (Fed. Cir. 1988) .................................................................. 17

*Pragmatus Telecom LLC v. NewEgg Inc.*,
    Civil Action No. 12-1533-RGA, 2016 WL 675529, at *3 (D. Del. Feb. 18, 2016) ........... 9, 13

*Reckitt Benckiser LLC v. Aurobindo Pharma Ltd.*,
    No. 14-1203-LPS, 2017 WL 4613643 (D. Del. Oct. 16, 2017) .................. 12, 16

*Rothschild Connected Devices Innovations, LLC v. Guardian Protection Services, Inc.*,
    858 F.3d 1383 (Fed. Cir. 2017) .................................................................. 17

*Saldana v. Kmart Corp.*,
    260 F.3d 228 (3d Cir. 2001) ................................................................... 3, 19

*Sarif Biomedical LLC v. Brainlab, Inc.*,
    No. 13-846-LPS, 2016 WL 5422479 (D. Del. Sept. 27, 2016) ................. 14

*SFA Sys., LLC v. Newegg Inc.*,
    793 F.3d 1344 (Fed. Cir. 2015) ............................................................... 9, 16

*Stephenson v. Game Show Network, LLC*,
    Civ No. 12-614-SLR, 2017 WL 2957815 (D. Del. July 11, 2017) ........... 12

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
    726 F.3d 1306 (Fed. Cir. 2013) .................................................................... 7

*Thomas v. Tenneco Packaging Co., Inc.*,
    293 F.3d 1306 (11th Cir. 2002) .................................................................. 19

*U.S. ex rel. Atkinson v. P.A. Shipbuilding Co.*,
    473 F.3d 506 (3d Cir. 2007) ....................................................................... 18

*Walker v. Health Int'l Corp.*,
    845 F.3d 1148 (Fed. Cir. 2017) .................................................................. 18

*Wedgetail Ltd. v. Huddleston Deluxe, Inc.*,
   576 F.3d 1302 (Fed. Cir. 2009)..................................................................... 12

## STATUTES:

28 U.S.C. § 1927.................................................................................. 18, 19, 20
35 U.S.C. § 282............................................................................................. 8
35 U.S.C. § 285...................................................................................... *passim*
35 U.S.C. § 311........................................................................................... 16
35 U.S.C. § 314............................................................................................. 6

## RULES:

Fed. R. of Evid. 408............................................................................... 15, 20

## REGULATIONS:

37 C.F.R. § 42.100(b) .................................................................................. 8

## I.  STAGE OF THE CASE

The cases referenced above were all stayed in their "nascent stage" by agreement of the parties after the Patent Trial and Appeal Board ("PTAB") instituted *inter partes* review ("IPR") on approximately 60% of the claims challenged by Mitek. (D.I. 71). Prior to the stays, nothing material occurred. The patent claims asserted Plaintiff Rothschild Mobile Imaging Innovations, LLC ("RMII") in the cases were invalidated as obvious at PTAB on July 20, 2016. RMII moved to dismiss the actions without prejudice on September 9, 2016 (D.I. 81). On September 21, 2016, Mitek contested the motion and filed a competing request for a judgment of non-infringement or, in the alternative, a dismissal with prejudice (D.I. 83). On September 15, 2017, the Court dismissed the cases with prejudice. (D.I. 90).

## II.  SUMMARY OF ARGUMENT

1.  Mitek seeks a finding by the Court that a decision invalidating a patent in an IPR can, without more, establish a district court case asserting the PTAB invalidated claims to be frivolous, vexatious or brought in bad faith, and thereby exceptional under 35 U.S.C. § 285. Mitek has not identified a single precedent supporting their position. This is not surprising, since IPRs and district court proceedings are vastly different. In IPRs patent invalidity is determined by a preponderance of the evidence, the PTAB uses a broadest reasonable interpretation claims construction standard, and in IPRs patent claims are not presumed valid.[2] To find the case exceptional under the standards applicable this forum, the Court would have to evaluate the merits of RMII's claims without a record – an impossible task. Mitek's PTAB victory cannot establish the same result would have occurred in this Court under a higher evidentiary standard,

---

[2] *Large Audience Display Sys., LLC v. Tennman Prods., LLC*, 660 Fed. Appx. 966, 971 (Fed. Cir. 2016)

where patent claims are presumed valid, claim terms are construed under the *Philips* person of ordinary skill lens, and experts can be cross-examined live before an Article III judge and jury.

2.  Even if IPR results were relevant in assessing whether a district court case is exceptional under 35 U.S.C. § 285, the IPR results in fail to demonstrate RMII's conduct in this case was exceptional.

3.  Mitek has not shown that RMII litigated the case in this forum unreasonably or vexatiously. RMII agreed to stay the case pending the IPRs and filed only one motion in the litigation: a motion to voluntarily dismiss the case after the IPR final decisions. Filing suits against direct infringers-the Bank Defendants-is is expressly authorized by the Patent Act. The Bank Defendants were sued for three valid reasons: (1) RMII would not settle for nuisance value and believed Mitek was near bankrupt and unable to settle the case or satisfy a judgment;[3] (2) the Bank Defendants were the direct infringers; and (3) the then-existing laches defense could have barred RMII's claims against the Bank Defendants if not timely filed.

4.  Mitek's invocation of settlement communications to argue for sanctions is without precedent or support in any rule, statute, or court order. The emails, while regrettably aggressive in tone, were sent during a time of high frustration over Mitek's equally aggressive settlement communications. Such communications are permissible under the ABA Model Rules.

5.  Mitek's claim that RMII's IPR against a Mitek patent establishes exceptionality asks the Court to sanction RMII for conduct outside of the litigation that is unquestionably legal and permissible. RMII was entitled to utilize the same IPR process used by Mitek five times against

---

[3] At the time, Defendant was losing multiple millions of dollars a year (D.I. 30 ¶ 14).

RMII. RMII and Mitek are direct competitors in the patent licensing market, though Mitek's efforts have also failed due to Mitek's "weak" patent portfolio.[4]

6. Mitek's arguments for deterrence are specious. RMII never sought a nuisance settlement; indeed, Mitek contended that RMII's settlement offers were "beyond the pale" as too high.

7. Even if the Court were to disregard the record and law, Mitek's request for fees incurred in prosecuting IPRs it chose to file is without legal support. The statute authorizing IPRs, the American Invents Act, does not include a fee shifting provision if a patentee loses an IPR, and no statute or rule supports this Court awarding fees incurred by a prevailing party in an administrative proceeding where fees are not available and were never sought.

8. There is no basis for fees against Shore Chan DePumpo, LLP. ("SCD"). Mitek has identified no litigation misconduct nor any authority that sending settlement communications, even aggressive or threatening ones, justifies sanctioning counsel. To the contrary, this Court holds that a few "not pretty" comments are insufficient to award fees against counsel.[5]

## III. STATEMENT OF FACTS

Leigh M. Rothschild is the inventor of the patents in suit and the Managing Director of RMII. *See* Decl. of Leigh M. Rothschild, attached as Ex. A at ¶ 2. Mr. Rothschild has a "lifelong passion" for inventing, received his first patent more than 30 years ago, and was issued over 100 U.S. patents. *Id.* ¶¶ 3, 4. President George H.W. Bush appointed him to the "High-Resolution Board of the United States" in 1992 and Governor Jeb Bush appointed him to Florida's IT Technology Board in the 1990s. *Id.* ¶ 8. Mr. Rothschild's passion for inventing extends to his charitable endeavors: through the Rothschild Family Foundation, Mr. Rothschild funded the "Rothschild Entrepreneurial Prize" at the Univ. of Miami, in addition to other causes. *Id.* ¶ 9.

---

[4] *See* https://seekingalpha.com/article/4076084-empire-strike-back-mitek-systems.
[5] *Saldana v. Kmart Corp.*, 260 F.3d 228, 237 (3d Cir. 2001).

Mr. Rothschild was the Chairman of IntraCorp, Inc., a Miami-based video game publishing company, and founded Capstone Software, Inc., an IntraCorp subsidiary. *Id.* ¶¶ 5, 6. He founded BarPoint, Inc., a company specializing in e-commerce, that patented and licensed barcode technology to various major Internet companies such as eBay and Microsoft. *Id.* ¶ 7. Mr. Rothschild continued inventing in the field of e-commerce, including the patents-in-suit, and engaged SCD on January 8, 2014. *Id.* ¶ 11.[6]

SCD conducted significant pre-suit diligence between January and May of 2014. *See* Decl. of Alfonso G. Chan at Ex. B, ¶¶ 2-4. SCD's pre-suit investigation team included Mr. Chan, an associate, a patent agent, a scientific advisor, and a paralegal. *Id.* ¶ 3. SCD evaluated the RMII patents and prosecution histories, identified and evaluated potential infringers' products, collected and reviewed documents from RMII, generated multiple iterations of claim charts, reviewed the work of prior counsel, evaluated prior art references, and evaluated Mitek's patents and the prior art cited therein. *Id.* ¶¶6,7. Attorneys or experts at SCD spent at least 400 attorney hours and approximately $20,000 in out of pocket expenses evaluating RMII's claims against Mitek prior to filing suit. *Id.* ¶ 8.

RMII filed suit on May 16, 2014 (D.I. 1). Mitek requested, and RMII granted, two stipulations extending Mitek's time to answer or respond (D.I. 86 ¶ 2). On June 26, 2014, Ryan Smith of Wilson Sonsini Goodrich & Rostai ("WSGR") contacted Michael W. Shore of SCD to discuss settlement. *Id.* Based upon a claimed interest in pursuing an early resolution, Mitek requested, and received, yet a third extension so that the parties could continue settlement discussions. *Id.* Through June, July, and August of 2014, James Yoon, also of WSGR, and Mr.

---

[6] SCD primarily represents premier research universities in commercializing their patent portfolios. *See* http://www.shorechan.com/who-we-represent.asp. (last visited Nov. 13, 2017).

Shore participated in discussions with an aim towards an in-person meeting between party principals. *Id.* ¶ 3. During those discussions, SCD learned WSGR previously represented Mr. Rothschild. *Id.* ¶ 4. Recognizing the conflict, WSGR withdrew on October 10, 2014 (D.I. 24).

During these discussions, before Mitek's current counsel participated, Mr. Yoon repeatedly represented that the main barrier to settlement was Mitek's lack of liquidity and inability to fund any settlement (D.I. 86 ¶ 6). "Because we believed [Defendant's] representations regarding its lack of liquidity, the above-referenced lawsuits were amended to include [Defendant's] banking partners." *Id.* RMII provided a term sheet on September 24, 2014 that attempted to resolve Mitek's claimed going concern/liquidity issues by tying settlement proceeds to capped royalty payments and a convertible equity interest. *Id.* ¶ 7. The term sheet provided an exclusive license and contemplated an arrangement between RMII and Mitek to split future licensing revenue from their combined patent portfolios, split the costs of any IPR defenses, share cross-licensing revenue, and a release payment of $1.5 M in cash and $1.5 M in stock options with a running royalty. *See* Decl. of Michael W. Shore, attached as Ex. C, at Ex. 1

Mr. Yoon contacted Mr. Shore on September 29, 2014, and made clear that Mitek would not meet with RMII as agreed because its settlement offer was "beyond the pale" and would not be countered (D.I. 86 ¶ 8). Mr. Shore sent an email to Mr. Yoon memorializing that communication; Mr. Yoon never responded to or disputed the content of that email. *Id.* at ¶ 8, Ex. D. Nor has Mitek disputed any of these facts, which were previously presented with RMII's reply in support of its motion to dismiss. When these initial negotiations concluded, Mitek had still not answered RMII's complaint.  Mitek moved in November of 2014 to sever the claims against the Bank Defendants, stay them, and transfer to the Southern District of California (D.I. 26). A month later, the parties submitted their first scheduling order (D.I. 37). The Defendants' motions to

dismiss RMII's willfulness allegations were granted on March 30, 2015 (D.I. 51). Approximately one week later, the cases were reassigned to this Court. On May 12, 2015, the parties filed a revised scheduling order.

Defendants answered on June 29, 2015 (D.I. 59, 60) and the parties filed amended pleadings through July 2015. Between July 23 and August 6, 2015, the PTAB instituted four of Mitek's five IPRs.[7] On July 29, 2016, the Court granted the Bank Defendants' motion to stay and sever and found that "this litigation is in a nascent stage. A trial date is set for April 2017–nearly two years from now.... Litigation is still getting underway." (D.I. 71 at n. 5). After the last IPR institution decision was decided, the parties *jointly* stipulated to a stay pending the IPRs noting that "discovery is not complete and the cases are still in a relatively early stage." (D.I. 73). Ultimately, the IPRs resulted in invalidation for obviousness for each of the claims asserted by RMII in its infringement contentions. Although RMII survived 46 out of 113 challenges to its claims and retained 35 claims, because the asserted claims were invalidated and the reversal of such decisions is almost impossible on appeal,[8] Plaintiff moved to voluntarily dismiss the lawsuits on September 16, 2016 (D.I. 81, 82).

Mitek responded and requested the Court enter judgment of non-infringement, despite the lack of any evidence on the merits (D.I. 83). Mitek also "previewed" the current attorney fee motion, referencing the same three settlement emails. *Id.* In reply, RMII provided the full context

---

[7] Regarding the 620 IPR, the PTAB was "not persuaded, under 35 U.S.C. § 314(a), that Petitioner has demonstrated a reasonable likelihood that it would prevail in showing the unpatentability of any of the challenged ['792 patent] claims." In the 621 IPR, the PTAB declined institution of claim 11 of patent '792, but instituted an IPR for claims 1-10. IPRs were instituted for all claims of the '163 patent and the '118 patent in 622 and 623 IPRs. Finally, the PTAB declined to institute an IPR for claims 1-26 and 29-37 of the '872 patent, but granted an IPR for the remaining four claims in the 624 IPR.
[8] *See IPR Appeals: Pendency and Success Rates at Fed. Circ.*, *available at* https://www.law360.com/articles/884916 (noting 75% affirmance rate).

of the settlement discussions, as also set forth above (D.I. 85). In the current motion, Mitek does

not dispute that it feigned settlement discussions to buy time to file IPRs, or that it's CEO called

Mr. Rothschild a "bank robber" who "should be ashamed of himself" for filing the suits, and that

Mitek would "beat down" RMII.

## IV. <u>ARGUMENT</u>

To summarize Mitek's motion, it seeks fees and expenses to punish RMII for losing the

asserted patent claims in the IPRs and sending three emails during acrimonious settlement

negotiations. That position is legally and factually unsupportable.

### A.  The case was filed in good faith.

In deciding a motion for fees, the Court must start with the presumption that a patentee's

"assertion of infringement of a duly granted patent is made in good faith."[9] To overcome that

presumption, a defendant must demonstrate, by a preponderance of the evidence, that the case is

exceptional.[10] That presumption cannot be overcome simply because the patentee lost its case, or

"as a penalty for failure to win a patent infringement suit."[11] Rather, the Court may enter a fee

award under 35 U.S.C. § 285 only to prevent "gross injustice [which] should be bottomed upon a

finding of unfairness or bad faith in the conduct of the losing party, or some other equitable

consideration of similar force, which makes it grossly unjust" to not award fees. *Id.* "Although an

exceptional case finding is no longer constrained to 'inequitable conduct before the PTO;

litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or

willful infringement,' *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034

(Fed. Cir. 2002), the absence of such conduct also weighs against an award."[12]

---

[9] *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1326-27 (Fed. Cir. 2013).
[10] *Octane Fitness*, *LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1758 (2014).
[11] *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017)
[12] *Astrazeneca AB v. Aurobindo Pharma Ltd*, C.A. No. 14-664-GMS (D. Del. Feb. 2, 2017).

*1.   Defendant has not shown Plaintiff's filing of the cases was in bad faith or unjustified.*

Defendant contends that if Plaintiff had performed a reasonable investigation, it would have

discovered that the asserted claims were invalid and not infringed (D.I. 98 at 16). Defendant

offers no evidence to support that allegation.

If invalidation of patent claims as a result of IPR proceedings *ipso facto* meant any assertion

of the same claims in ***previously*** filed district court litigation was frivolous, the presumption that

duly issued patents are valid in district courts disappears. In passing the America Invents Act,

Congress did not cancel the presumption of validity in 35 U.S.C. § 282. The PTAB invalidates

close to 80% of the patents it reviews,[13] in contrast to the approximately 50% invalidation rate in

district courts that consider invalidation on far more grounds.[14] Former Federal Circuit Chief

Judge Rader characterized the PTAB as a "death squad" that "kill[s] property rights."[15] Not only

weak patents are being wiped out by this process; "experience has shown that the opposite is

true. The IPR procedure is only being used against the best United States patents."[16]

PTAB results cannot be used to analyze the strength of cases filed in district courts because

PTAB utilizes the "broadest reasonable construction" standard when construing claims, thus

sweeping in prior art that would never be considered analogous when evaluating anticipation or

obviousness in a district court.[17] Further, "the PTAB only considers whether the claims are

invalid under a preponderance of the evidence standard; unlike in the district court no

---

[13] Samson Vermont, *IPR Statistics Revisited: Yep, It's a Patent Killing Field* (Feb. 8, 2017),
https://www.patentattorney.com/ipr-statistics-revisited-yep-its-a-patent-killing-field/
[14] *Id.* The rate in district court includes grounds not available in IPRs, such as § 101 patent
eligibility and § 112. The invalidation rate in IPRs on anticipation and obviousness is
approximately 3X higher than the rates of invalidation on those same bases at PTAB.
[15] Tony Dutra, *Rader Regrets CLS Bank Impasse, Comments on Latest Patent Reform Bill*,
Bloomberg BNA (Oct. 28, 2013), http:// www.bna.com/rader-regrets-cls-n17179879684.
[16] *Id.*
[17] *See* 37 C.F.R. § 42.100(b).

presumption of validity attaches to the claims and the question of validity is not measured by the clear and convincing evidence standard."[18]

To prove the RMII infringement actions were frivolous or filed in bad faith ***here***, the Court must require Mitek to prove that it could have established by clear and convincing evidence, using a claims construction under the district court litigation *Philips* standard, that the claims RMII asserted were obviously and objectively invalid. As stated in *Pragmatus Telecom LLC v. NewEgg Inc.*, "[i]t is certainly difficult … to prove that a case is exceptionally meritless" without the guideposts of "claim construction, substantive briefing of merits issues, or expert testimony…. Moreover, [defendant] has not located any case where a district court has ever found a case exceptional in the absence of a single decision on the merits."[19] To evaluate frivolousness would require "a 'min-trial' on the merits for attorneys' fees purposes."[20] The Court should be not conduct these mini-trials, which would be "a monumental waste of judicial resources in the context of a discretionary paradigm."[21]

Nor has Mitek proven the prior art that it used in the IPRs was readily available to RMII, how RMII should have identified it, how RMII should have been motivated to combine those references under the proper standards, or why that should have convinced RMII to abandon its

---

[18] *Large Audience Display Sys.*, 660 Fed. Appx. at 971 (no frivolousness based upon invalidation at PTAB).
[19] Civil Action No. 12-1533-RGA, 2016 WL 675529, at *5 n.3 (D. Del. Feb. 18, 2016).
[20] *In re Protegrity Corp.*, No. 3:15-md-2600, 2017 WL 747329, at *3 (N.D. Cal. 2017) (quoting *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1349 (Fed. Cir. 2015)).
[21] *Computer Software Protection, LLC v. Adobe Sys. Inc.*, No. 12-451-SLR, 2015 WL 1517402, at *2 (D. Del. 2015), *aff'd without opn.*, 2016 WL 945248 (Fed. Cir. 2016) (§ 285 request was "presumptuous" in case with no claim construction, without multiple discovery disputes, or resolving motions to dismiss or for summary judgment)

9

presumption of validity.[22] Mitek contends simply that because it won at the PTAB under standards that favor patent challengers, RMII should have known that its case in an Article III court with a presumption of validity and full due process rights was meritless. As explained by the Federal Circuit, a defendant cannot rely upon "the fact that [Plaintiff] lost at the PTO" to prove a case is exceptional.[23]

Defendant also makes much of its purported "Rule 11" letter, which states it is a "DRAFT: FOR DISCUSSION ONLY." That letter, in less than two pages of text, recites claim language for each of the five patents in suit and then baldly asserts that the accused products do not have those limitations (D.I. 100 at 240). The letter cites no literature, no product diagrams, no marketing information, no claim charts, and, frankly, no facts in support of its contentions. If Mitek "had a legitimate concern regarding the sufficiency of identification [in Plaintiff's] infringement contentions, [it] could have raised that concern with the Court."[24] It chose neither to provide RMII with sufficient information nor to seek Court intervention.

Moreover, "Rule 11 'imposes mandatory obligations upon the party seeking sanctions, so that failure to comply with the procedural requirements precludes the imposition of the requested sanctions.'"[25] One of those procedural obligations is the 21-day safe harbor that prohibits a party

---

[22] *See Hockeyline, Inc. v. STATS LLC*, 2017 WL 1743022, at *4 (S.D.N.Y. 2017) (denying § 285 motion where defendant failed to explain how prior art was available or how a pre-suit investigation would have revealed invalidity).

[23] *Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods, Inc.*, 790 F.3d 1369, 1372-73 (Fed. Cir. 2015); *see also Mass. Institute of Tech. v. Micron Tech., Inc.*, No. 15-10374, 2016 WL 3390690, at *4 (D. Mass. 2016) ("the PTAB's preliminary conclusion that defendants advanced a reasonable invalidity argument does not make MIT's validity argument unreasonable."); *Jedi Techs., Inc. v. Spark Networks, Inc*., 2017 WL 3315279, at *11 (D. Del. 2017).

[24] *E2E Processing*, 2016 WL 6217177, at *3.

[25] *Dragon Intellectual Property, LLC v. AT&T Servs., Inc.*, No 13-2061-RGA, 2016 WL 3746377, at *2 (D. Del. July 12, 2016) (citing *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 389 (4th Cir. 2004) (en banc); *In re Miller*, 730 F.3d 198, 204 (3d Cir. 2013)).

from "delay[ing] serving its Rule 11 motion … until the conclusion of the case."[26] Here, Defendant waited until after the case was dismissed to file its motion invoking Rule 11 and it must be denied as untimely in addition to its substantive weaknesses. *Id.* at \*4.

      *2.   Defendant has not shown that Plaintiff's conduct before the PTAB was inequitable.*

Even if IPRs were relevant to the exceptional case inquiry, Mitek has not presented any evidence that the conduct in the IPRs or their results establish "gross injustice." While Mitek attached the IPR materials to its attorneys' fee motion, it tellingly provided no analysis of those papers. The papers reveal the patents in suit fared much better than most subjected to IPRs. Mitek challenged 113 claims, but only managed to invalidate 67—41% of the claims challenged survived. And RMII achieved total success in defeating the 620 IPR, wherein the administrative patent judges found Mitek's arguments "unpersuasive," "unreasonably broad" and that its expert had simply parroted attorney argument. *See* Ex. D at pp. 10, 13, 18. Mitek's arguments regarding claim 11 in the 621 petition were "unpersuasive," lacked "explanation on how the associated information, in order to be 'parsed,' was gathered, collected, or organized in some tangible form," contained an "unreasonably broad" claim construction, and showed no reasonable likelihood of prevailing regarding all claims on certain combinations of alleged prior art (D.I. 99 at 944-46). Some of Mitek's proposed claim constructions were found "insufficient" in both the 622 and 623 IPRs (D.I. 99 at 972, 996). In the 624 IPR, Mitek was unable to invalidate claims 1-26 or 29-37 (D.I. 99 at 1016). That result was so in RMII's favor that it allowed the 4 instituted claims to be invalidated rather than pay hundreds of thousands in costs and have the other 34 claims in IPR limbo (D.I. 100 at 190).

---

[26] *Id.* at \*3 (citing *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 99 (3d Cir. 2008)); *see also Orenshteyn v. Citrix Sys., Inc.*, 341 Fed. Appx. 621, 626 (Fed. Cir. 2009) (reversing Rule 11 sanctions where motion to filed immediately prior to judgment).

### 3. *Plaintiff did not litigate the cases in an unreasonable or vexatious manner.*

Mitek claims that RMII "maximized all possible opportunities to force unneeded work" (D.I. 98 at 12). Yet the ***only*** motion filed by RMII in this case was its voluntary motion to dismiss. Every other motion was filed by Mitek, including its failed attempt to transfer venue and its overbroad request for judgment on the merits. Mitek's argument also ignores that RMII ***agreed*** to stay the case after the last IPR was instituted and immediately offered dismissal when the asserted claims were found invalid at the PTAB. Those facts alone require denial of Defendant's request for fees.[27] The Court in *Stephenson v. Game Show Network, LLC*, Civ No. 12-614-SLR, 2017 WL 2957815, at *2 (D. Del. July 11, 2017), faced a nearly identical situation:

> Defendants basically argue that this case should be characterized as exceptional because their initial evaluation of the '237 patent as invalid was ultimately determined to be correct by the PTAB. The court disagrees. In the first instance, it is the exceptional case where a patentee accepts the initial evaluation of a defendant (as opposed to a court) as to the validity of his patent, not the reverse. In the second instance, it was defendants—not plaintiff—who filed every motion on the docket, including a motion to transfer venue (which this judicial officer generally denies and did deny), a motion for stay (another motion which this judicial officer generally denies but did not have to decide because of the parties' stipulation), and a motion for entry of judgment which was admittedly over-broad. In light of the hundreds of patent cases managed by this judicial officer over the years, defendants' contention that plaintiff "maintained an aggressive litigation stance while the IPR was pending" seems almost ludicrous. The docket reflects a modicum of routine discovery skirmishes that occur in nearly every patent case. The fact that defendants maintained from the outset that the '237 patent was invalid does not change this modest case into an exceptional one.[28]

---

[27] *Wedgetail Ltd. v. Huddleston Deluxe, Inc.*, 576 F.3d 1302, 1306 (Fed. Cir. 2009) (upholding denial of fees where the plaintiff immediately sought dismissal upon determining that it could not prevail under the district court's claim construction.); *Reckitt Benckiser LLC v. Aurobindo Pharma Ltd.*, No. 14-1203-LPS, 2017 WL 4613643, at *3 (D. Del. Oct. 16, 2017) (denying fees "when, in the course of its investigations, [plaintiff] determined that it no longer had a good faith basis to assert the [patent at issue], [plaintiff] promptly withdrew that patent from this case."); *In re Protegrity Corp.*, 2017 WL 747329, at *4 (N.D. Cal. 2017) ( "If anything was surprising here, it was [plaintiff's] agreeability to staying the court proceedings, accepting the PTAB's findings, and voluntarily terminating its claims.").

[28] *See also Nexans Inc. v. Belden Inc.*, Civ. No. 12-1491-SLR/SRF, 2017 WL 2303486, at *2 & n.7 (D. Del. May 26, 2017) (case not exceptional where "[t]he circumstances at bar are far

Despite its exaggerated and incorrect claim of vexatious litigation, Mitek points to only three instances of purported misconduct: (1) including the Bank Defendants in the suit; (2) repleading willfulness claims; and (3) issuing a press release. None support attorneys' fees.

Regarding the Bank Defendants, Mitek has pointed to no statute or rule that states including direct infringers in a single filing is improper. Adding downstream infringers to a suit does not support an exceptional case filing because doing so is "something that is expressly allowed and contemplated by the Patent Act."[29] RMII elected to include the Bank Defendants in reliance upon Mitek's counsel's repeated representations that Mitek lacked liquidity to finance any settlement or pay any judgement (D.I. 86 ¶¶ 6, 7, 9). Jim DeBello, the CEO and President of Mitek, swore that in the two fiscal years before RMII filed suit, Mitek had net *losses* of over $5 million and $7 million (D.I. 30 ¶ 14). The decision to add the Bank Defendants was a continuation of a strategy to ensure claims against direct infringers able to satisfy a judgment were on file before a laches period ran. At the time, laches was still a recognized defense.[30]

RMII admits that it replead its willfulness allegations, but denies that they were pled as Mitek contends. RMII's willfulness allegations in its amended pleading made clear that:

> The Court previously dismissed Plaintiff's willfulness allegations against [Defendants] based upon a lack of pre-suit notice…. Because the failure to include a dismissed claim of an amended pleading may constitute a waiver of the right to challenge on appeal the basis for dismiss, Plaintiff repleads its willfulness allegations in this Amended Complaint. *See U.S. ex rel. Atkinson v. P.A. Shipbuilding Co.*, 473 F.3d 506 (3d Cir. 2007).

---

removed from those attendant to what the court has deemed exceptional, that is, when a party not only uses every litigation tool available pre-trial, trial, and post-trial, but moves to reargue decisions made by the court, thus multiplying the work and making it that much more difficult to move the case forward to resolution.").

[29] *Pragmatus Telecom LLC v. NewEgg Inc.*, Civil Action No. 12-1533-RGA, 2016 WL 675529, at *3 (D. Del. Feb. 18, 2016) (denying fees for suing customers).

[30] *SGA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 137 S. Ct. 954, 967 (2017) (holding laches defense inapplicable to patent infringement cases).

(D.I. 61-1 at ¶ 28). RMII was correct to preserve this issue for appeal. The Supreme Court's

subsequent decision in *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923 (2016),

created a "less rigid standard" that has resulted in this District ceasing to dismiss claims of

willfulness based upon only post-suit knowledge.[31]

The press release issued by Plaintiff also cannot support attorneys' fees. "In Delaware, an

absolute privilege attaches to all statements made in the course of judicial proceedings."[32] It

cannot be disputed that RMII's press release is a statement of opinion regarding ongoing

litigation. In any event, Mitek issued its own press release regarding the invalidation of the

asserted patent claims thereby clearing the air regarding its contentions (D.I. 88-1). A press

release does not establish a case is "meritless" or "predatory."[33]

###### 4.   *Plaintiff's counsel did not commit any form of misconduct.*

Mitek contends that three strongly-worded emails (quoted at least three times each) from

RMII's counsel are enough to render this case exceptional. As set forth in RMII's Motion to

Strike, these emails should be stricken. But even if the emails are considered, they provide no

basis for attorneys' fees. Mitek cites no rule, statute, or court order violated by the emails. To the

contrary, the American Bar Association explicitly authorizes statements in negotiation even if

they "exaggerate or emphasize the strength, and minimize or deemphasize the weaknesses of its

factual or legal position."[34] RMII's counsel's remarks are "'posturing' or 'puffing' [and] are

---

[31] *DermaFocus LLC v. Ulthera, Inc.*, No. 15-654-SLR, 2016 WL 4263122, at *6 (D. Del. Aug. 11, 2016).

[32] *Carroll v. ABM Janitorial Services-MID Atlantic, Inc.*, 970 F. Supp. 2d 292, 300 (D. Del. 2013); *see also AGC Networks, Inc. v. Relevante, Inc.*, No. 14-308-LPS, 2015 WL 1517419, at *2 (D. Del. Mar. 31, 2015).

[33] *Sarif Biomedical LLC v. Brainlab, Inc.*, No. 13-846-LPS, 2016 WL 5422479, at *2 (D. Del. Sept. 27, 2016) (finding press release unpersuasive on motion for fees)

[34] ABA, Formal Op. 06-439 (2006).

statements upon which parties to a negotiation ordinarily would not be expected justifiably to rely." *Id.* Even if the Court finds the three emails threatening, "[n]ot all threats are impermissible in the context of settlement negotiations."[35]

None of Mitek's present counsel were part of those email exchanges and cannot dispute that Mitek's prior counsel repeatedly represented Mitek was financially unable to satisfy any reasonable settlement demand, much less a judgment or that Mitek's CEO repeatedly threatened and insulted Mr. Rothschild. The communications in which Mitek's current counsel participated occurred ***after*** this case was stayed. Those emails cannot demonstrate bad faith litigation conduct because the litigation was effectively over. When the emails at issue are considered in context, they show frustration that RMII was misled into participating in settlement communications that Mitek used only to obtain delay to file IPRs.

To hold Plaintiff or SCD liable for the content of settlement negotiations would violate the public policy considerations inherent in Federal Rule of Evidence 408 and would chill negotiations and settlements in the future.[36]

> 5. *Plaintiff was entitled to file an IPR petition against Defendant.*

Mitek contends that RMII's affirmative IPR against a Mitek patent was somehow improper because "Plaintiff is a non-practicing entity and does not have any products of its own." That is both wrong and irrelevant. First, Mitek is RMII's direct competitor in the licensing industry. *See* (D.I. 71) (finding that Defendant "licenses [its] technology"). RMII enjoys the same right to attempt to clear the marketplace of competing patents that Mitek does. Second, there is no

---

[35] ABA, Section of Litigation, *Ethical Guidelines for Settlement Negotiations* (August 2002) at § 4.3.2. That same publication denounces the use of settlement negotiations to delay proceedings, the tactic advanced by Defendant at the onset of the case. *Id.* § 4.3.1

[36] *Inline Connection Corp. v. AOL Time Warner Inc.*, 470 F. Supp. 2d 435, 444 (D. Del. 2007).

standing requirement to file an IPR; any "person who is not the owner of a patent may file with the Office a petition to institute an inter partes review of the patent." 35 U.S.C. § 311. Having filed five petitions for IPR against RMII, Mitek cannot credibly argue that RMII's single IPR indicates anything other than an interest in continuing its licensing business with a clearer field.

    6.  *Defendant has shown no basis for deterrence.*

Because Mitek made no showing that RMII's litigation position was frivolous, the Court need not address deterrence.[37]

Mitek's claim that RMII brought suit for nuisance value with no intent to test the merits is baseless. RMII offered terms of settlement intended to create a relationship with Mitek, with the exchange of equity, an exclusive license, and a running royalty—a settlement offer that Mitek deemed "unreasonable." (D.I. 86 ¶ 7); Ex. C, at Ex. 1. There was never a nuisance value settlement offered below the costs of litigation.[38] The only entities ever sued by RMII for infringement of the patents in suit are Mitek and the Bank Defendants in related cases that all used Mitek's technology. Ex. A ¶ 12.  Nor is there any evidence that RMII sought to avoid litigating the merits; RMII fully participated in all of the litigation that occurred, and in the case of the IPRs, won some.[39]

Mr. Rothschild's activities through different legal entities represented by different counsel asserting different patents is irrelevant. "The mere existence of these other suits does not mandate negative inferences about the merits or purpose of this suit."[40] In this case, there is ***no***

---

[37] *Reckitt Benckiser LLC v. Aurobindo Pharma Ltd.*, No. 14-1203-LPS, 2017 WL 4613643, at *3 (D. Del. Oct. 16, 2017).

[38] *See Eon-Net LP v. Flagstar Bancorp.*, 653 F.3d 1314, 1327 (Fed. Cir. 2011) (awarding fees with evidence Plaintiff "offered to settle using a license fee schedule").

[39] *Parallel Networks, LLC v. Kayak Software Corp.*, No. 2015-1681, 2017 WL 2859568, at *3-4 (Fed. Cir. July 5, 2017) ( "no evidence that [plaintiff] sought to avoid litigating the merits.").

[40] *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1351 (Fed. Cir. 2015).

evidence of any relationship between RMII and settlement demands by other entities in other

cases involving different patents. There was no misconduct in *this* case and Mitek's attempts to

generate the appearance of such by reference to other matters without any context or record is

pure conjecture and should be given no weight.[41]

       *7.   Defendant is not entitled to fees for IPR proceedings.*

    Mitek seeks unspecified attorneys' fees for participating in IPR proceedings it filed to avoid

this forum. The cases cited by Mitek are distinguishable. They address administrative

proceedings filed by the patentee that required the accused infringer to participate, rather than the

IPRs filed voluntarily by the infringer.[42] Mitek filed the IPRs to avoid this forum and rob RMII

of its statutory presumption that its patents are valid. This Court has previously "decline[d] to

consider actions that occurred before another court" when assessing fees. *In re: Rembrandt*

*Tech., LP Patent Litigation*, MDL Docket No. 07-md-1848 (GMS) (D. Del. Aug. 24, 2016).

Even one case cited by Mitek excluded IPR fees.[43]

---

[41] *Rothschild Connected Devices Innovations, LLC v. Guardian Protection Services, Inc.*, 858 F.3d 1383 (Fed. Cir. 2017) does not compel a different result. The district court erred in that case because it failed to consider evidence relating to lawsuits filed by the same entity on the same patent where there was no "evidence demonstrating that Rothschild engaged in reasonable conduct before the District Court." *Id.* at 1389-90. Moreover, that case was filed by different counsel after the parties here agreed to a stay and thus Plaintiff had no knowledge of that finding during the pendency of this case. *See* 2:15-cv-1463 at (D.I. 1) (August 21, 2015). To award fees based upon this other matter would amount to a finding akin to double jeopardy.

[42] *See, e.g.*, *PPG Indus., Inc. v. Celanese Polymer Specialties Co., Inc.*, 840 F.2d 1565, 1568 (Fed. Cir. 1988) ("for [the accused infringer], participation in the [patentee's] reissue application was not optional.").

[43] *Drone Tech., Inc. v. Parrot S.A.*, 2015 U.S. Dist. LEXIS 98829 (W.D. Pa. July 21, 2015) (party requesting fees expressly excluded "[h]undred of thousands of dollars of billings for the IPR [as] billed to a separate matter and [that were] not included"); *see also Intellect Wireless, Inc. v. HTC Corp.*, No. 09 C 2945, 2015 WL 136142, at *9 (N.D. Ill. Jan. 8, 2015) (""time for work before the USPTO … should not be included in the fee award.").

**B.  Fees against Shore Chan DePumpo LLP are unwarranted and unsupported by any authority.**

Mitek contends that the Court should "impose sanctions on RMII's attorneys at Shore Chan DePumpo LLP for bad faith litigation tactics and egregious conduct" and cite Mitek's decision to sue the Bank Defendants and three settlement communications as support. The request to sanction SCD under 28 U.S.C. § 1927 or the Court's inherent powers fails for the same reasons as attorneys' fees fail under § 285 discussed above.

Filing suit against Mitek's customers who were direct infringers of the patents in suit is not sanctionable conduct. This is not a case like *Walker v. Health Int'l Corp.*, 845 F.3d 1148, 1154 (Fed. Cir. 2017), in which attorneys' fees were assessed because counsel litigated despite a settlement that "unambiguously resolved 'all claims.'" Nor is this a case like *In re Prudential Ins. Co. Am. Sales Practice Litigation Agent Actions,* 278 F.3d 175, 190 (3d Cir.), where the sanctioned attorney "bombard[ed] the Court with papers," "multiplied the proceedings at nearly every turn," and filed recusal motions, emergency motions to vacate a fee examiners appointment and for evidence summaries, and two identical sanctions motions. This case is also unlike *In re Prosser*, 777 F.3d 154, 159-60 (3d Cir. 2015), in which the sanctioned lawyer filed an adversary complaint in bankruptcy court, filed objections to quarterly fee applications based upon the same conduct, and filed a motion for hearing regarding an alleged conflict of interest. SCD did not mislead the court, violate injunctions, or file a "series of meritless motions and pleadings and delaying actions" which triggered "further warnings from the court."[44] Again, the only motion filed by SCD was its motion to dismiss.

Similarly, the settlement communications in this case pale in comparison to the conduct

---

[44] *Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991).

supporting fees against attorneys under § 1927 or the Court's inherent power. This case is unlike

*Thomas v. Tenneco Packaging Co., Inc.*, 293 F.3d 1306 (11ᵗʰ Cir. 2002), in which the court

upheld the district court's sanction of a rebuke and warning that any further improper pleadings

would be struck. *Id.* 1318. There, the sanctioned attorney filed pleadings alleging her opposing

counsel "snarled" his words at depositions, was "a little man spewing venom," engaged in

"psycho babbling," "did not have the right to judge African Americans," attempted to "repudiate

African Americans' constitutional rights," engaged in "racist conduct," indicated he "hated

blacks," and that his "facial expressions and body language reminded [sanctioned counsel] of a

picture of the Grand Wizard of the KKK." *Id.*at 1317. Nor is this a case like *GMAC Bank v.*

*HTFC Corp.*, 248 F.R.D. 182, 187 (E.D. Pa. 2008), in which a witness used the "word 'f[ ]ck'

and variants thereof no less than 73 times."

Even if the Court finds SCD's settlement communications "not pretty," they do not "rise to

the level necessary to trigger sanctions." *Saldana v. Kmart Corp.*, 260 F.3d 228, 237 (3d Cir.

2001) (considering "four uses of the word 'f[ ]ck,' two in telephone conversations with attorneys

and two in asides to attorneys during depositions, and a post-verdict letter in which [counsel]

concurred with a juror who described an expert witness as a 'Nazi'"). "The language complained

of in this case did not occur in the presence of the Court and there is no evidence that it affected

either the affairs of the Court or the 'orderly and expedition disposition' of any cases before it."[45]

Plaintiff engaged Charles Slanina to opine on the oft-cited emails. Mr. Slanina is a former

Chief Disciplinary Counsel for the Delaware Supreme Court, a member of the Association of

Professional Responsibility Lawyers of the American Bar Association and teaches professional

responsibility. Opinion of Charles Slanina, attached as Ex. E., at p. 1. Mr. Slanina opines that "an

---

[45] *Id.* at 238.

award of fees against Shore Chan DePumpo LLP as requested in the Mitek motion would be inappropriate." *Id.* p. 3. Noting that Mitek alleged "no specific rule violation," the rules "are not designed to be a basis for civil liability" and that the purpose of the rules "can be subverted when they are invoked by opposing parties as procedural weapons." *Id.* at p. 4. The ABA rules, however, "do provide considerable leeway with regard to attorney conduct during negotiations." *Id.* Nothing provided by Mitek in its moving papers demonstrates a violation of any rule, and in fact only describes conduct that falls within the rules. An "award of attorneys' fees or sanctions would be both unusual and unsupported" by the ABA Rules. *Id.* at p. 5.

## V.  <u>CONCLUSION</u>

Defendant has not proven by a preponderance of the evidence that any conduct by Plaintiff or its counsel renders this case exceptional under 35 USC § 285 or sanctionable under 28 U.S.C. § 1927. Nothing indicates the litigation was pursued in bad faith, vexatiously, or for an improper purpose. The suits against the Bank Defendants were initiated in reliance upon repeated representations Mitek could not pay any award or reasonable settlement, and the Bank Defendants' might have had a laches defense if not sued before the case against a potentially insolvent Mitek concluded.

The settlement communications upon which Mitek's request for sanctions against SCD are based are presented out of context, inadmissible under Rule 408 and were part of sometimes heated, though permissible settlement communications. There is no basis, legal or factual, to sanction Plaintiff or its counsel.

Dated: November 13, 2017

STAMOULIS & WEINBLATT LLC

_/s/ Richard C. Weinblatt_
Richard C. Weinblatt #5080
Stamatios Stamoulis #4606
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
Telephone: (302) 999-1540
Facsimile: (302) 762-1688
weinblatt@swdelaw.com
stamoulis@swdelaw.com


_Of Counsel_:
Michael W. Shore*
Alfonso Garcia Chan*
Andrew M. Howard*
**SHORE CHAN DEPUMPO LLP**
901 Main Street, Suite 3300
Dallas, TX 75202
Telephone: (214) 593-9110
Facsimile: (214) 593-9111
mshore@shorechan.com
ahoward@shorechan.com
achan@shorechan.com

 * Admitted Pro Hac Vice
**ATTORNEYS FOR PLAINTIFF
ROTHSCHILD MOBILE IMAGING INNOVATIONS,
LLC**